ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Allen G. Kadish
Harrison H.D. Breakstone
Email: akadish@archerlaw.com
        hbreakstone@archerlaw.com

Hearing Date: May 1, 2019
Hearing Time: 4:00 p.m.
Objection Date: April 24, 2019

*Proposed Counsel for Park Monroe Housing
Development Fund Corporation, Northeast
Brooklyn Partnership and 984-988 Greene
Avenue Housing Development Fund Corporation,
Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                          Chapter 11

PARK MONROE HOUSING DEVELOPMENT                 Case No. 19-40820 (CEC)
    FUND CORPORATION,

        Debtor.

-------------------------------------------------------------x

In re:                                          Chapter 11

NORTHEAST BROOKLYN PARTNERSHIP,                 Case No. 19-40822 (CEC)

        Debtor.

-------------------------------------------------------------x

In re:                                          Chapter 11

984-988 GREENE AVENUE HOUSING                   Case No. 19-40823 (CEC)
    DEVELOPMENT FUND CORPORATION,

        Debtor.

-------------------------------------------------------------x

**NOTICE OF HEARING
ON DEBTORS' MOTION FOR AN ORDER
AUTHORIZING PAYMENT IN CONNECTION WITH
LIABILITY, PROPERTY, AND OTHER INSURANCE
PROGRAMS, INCLUDING PAYMENT OF POLICY PREMIUMS
AND OBLIGATIONS UNDER PREMIUM FINANCING AGREEMENTS**

TO THE HONORABLE CARLA E. CRAIG,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

**PLEASE TAKE NOTICE** that PARK MONROE HOUSING DEVELOPMENT FUND

CORPORATION, NORTHEAST BROOKLYN PARTNERSHIP and 984-988 GREENE

AVENUE HOUSING DEVELOPMENT FUND CORPORATION (the "**Debtors**"), debtors and

debtors-in-possession, filed the annexed Motion (the "**Motion**") for an order, substantially in the

form attached to the Motion as Exhibit A, pursuant to sections 105(a), 363(b) and 364(c) of Chapter

11 of title 11 of the United States Code (the "**Bankruptcy Code**"), authorizing, the Debtors to (i)

continue and, to the extent necessary, renew liability, property and other insurance programs and

pay all policy premiums arising thereunder or in connection therewith, including all such pre-

petition obligations arising in the ordinary course of business, and (ii) continue the Debtors'

insurance premium financing programs.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the relief sought in the

Motion and the issuance and entry of an Order will be held before the Honorable Carla E. Craig,

Chief United States Chief Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern

District of New York, 271-C Cadman Plaza East, Courtroom 3529, Brooklyn, New York 11201

on **Wednesday, May 1, 2019, at 4:00 p.m.** or as soon thereafter as counsel may be heard (the

"**Hearing Date**").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in

the Motion shall be in writing, shall conform to the Bankruptcy Code, the Bankruptcy Rules and

2

Local Rules of the Bankruptcy Court, shall set forth the name of the objecting party, the basis for the objection, the specific grounds therefor, and shall be filed with the Bankruptcy Court electronically in accordance with General Order 559 (with a courtesy copy delivered to the Chambers of the Hon. Carla E. Craig) and served in accordance with General Order 559, and served upon: (i) Archer & Greiner, P.C., proposed counsel to the Debtors, Attn: Allen G. Kadish, Esq., 630 Third Avenue, New York, New York 10017, and (ii) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014, so as to actually be filed with the Bankruptcy Court and received by **Wednesday, April 24, 2019**.

**PLEASE TAKE FURTHER NOTICE** that if no objection is timely filed and received, the Bankruptcy Court may grant the relief sought in the Motion on the Hearing Date. Objecting parties are required to attend on the Hearing Date and failure to appear may result in relief being granted or denied upon default.

Dated: New York, New York  
     March 12, 2019

ARCHER & GREINER, P.C.

By:    s/ Allen G. Kadish                 
     Allen G. Kadish  
     Harrison H.D. Breakstone  
630 Third Avenue  
New York, New York 10017  
Tel: (212) 682-4940  
Email: akadish@archerlaw.com  
     hbreakstone@archerlaw.com

*Proposed Counsel for Park Monroe Housing Development Fund Corporation, Northeast Brooklyn Partnership and 984-988 Greene Avenue Housing Development Fund Corporation, Debtors and Debtors-in-Possession*

ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Allen G. Kadish
Harrison H.D. Breakstone
Email: akadish@archerlaw.com
        hbreakstone@archerlaw.com

*Proposed Counsel for Park Monroe Housing
Development Fund Corporation, Northeast
Brooklyn Partnership and 984-988 Greene
Avenue Housing Development Fund Corporation,
Debtors and Debtors-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| PARK MONROE HOUSING DEVELOPMENT FUND CORPORATION, | Case No. 19-40820 (CEC) |
| Debtor. | |

-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| NORTHEAST BROOKLYN PARTNERSHIP, | Case No. 19-40822 (CEC) |
| Debtor. | |

-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| 984-988 GREENE AVENUE HOUSING DEVELOPMENT FUND CORPORATION, | Case No. 19-40823 (CEC) |
| Debtor. | |

-------------------------------------------------------------x

### DEBTORS' MOTION FOR AN ORDER
### AUTHORIZING PAYMENT IN CONNECTION WITH
### LIABILITY, PROPERTY, AND OTHER INSURANCE
### PROGRAMS, INCLUDING PAYMENT OF POLICY PREMIUMS
### AND OBLIGATIONS UNDER PREMIUM FINANCING AGREEMENTS

TO THE HONORABLE CARLA E. CRAIG,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

PARK MONROE HOUSING DEVELOPMENT FUND CORPORATION ("**Park Monroe**"), NORTHEAST BROOKLYN PARTNERSHIP ("**NBP**") and 984-988 GREENE AVENUE HOUSING DEVELOPMENT FUND CORPORATION ("**Greene Avenue**," each a "**Debtor**" and collectively, the "**Debtors**"), debtors and debtors-in-possession, by their proposed counsel, Archer & Greiner, P.C., as and for their motion (the "**Motion**") for an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 363(b) and 364(c) of Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), authorizing, but not directing, the Debtors to (i) continue and, to the extent necessary, renew liability, property and other insurance programs and pay all policy premiums arising thereunder or in connection therewith, including all such pre-petition obligations arising in the ordinary course of business, and (ii) continue the Debtors' insurance premium financing programs.  In support of the Motion, the Debtors respectfully represent as follows:

### Introduction

1.      The Debtors, which, together operate twelve residential buildings (the "**Buildings**") and 147 units in northeast Brooklyn, respectfully seek relief with respect to insurance programs consistent with sections 363(b) and 364(c) of the Bankruptcy Code.

2.      Each Debtor filed its Chapter 11 case to preserve and maximize its asset values for its creditors, and preserve its buildings for the good of each Debtor, its creditors and the community by affording each Debtor the necessary time and statutory tools to reorganize their financial affairs.

These Chapter 11 cases will provide an opportunity for each Debtor to restructure and otherwise assure its financial footing going forward.  In order to accomplish their goals in Chapter 11 the Debtors need the Buildings fully operational and protected under appropriate insurance coverage.

## Jurisdiction and Venue

3.　　This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.

4.　　This matter is core within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (D) and (O).

5.　　Venue is proper pursuant to 28 U.S.C. § 1408.

6.　　The statutory bases for the relief requested herein are sections 105(a), 363(b) and 363(c) of the Bankruptcy Code.

## Background

7.　　On February 11, 2019 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

8.　　 The factual background regarding the Debtors, including their current and historical business operations and the events precipitating each Chapter 11 filing, is set forth in detail in the *Declaration of Jeffrey E. Dunston Pursuant to Local Bankruptcy Rule 1007-4,* filed in support of each of the Chapter 11 petitions herein (the "**First Day Declarations**"), incorporated herein by reference.

9.　　The Debtors continue in possession of their property and continue to operate and manage their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10.　　No trustee or committee has been appointed in these cases.

## The Debtors' Business Operations

### i.  *Park Monroe's Business Operations*

11.    Park Monroe is a not-for-profit corporation organized under the laws of New York

on or about June 22, 2006.  Park Monroe owns and operates five residential buildings (the "**Park**

**Monroe Buildings**"), totaling 72 units that are approximately 75% leased:

| Address | Units | Neighborhood |
|---|---|---|
| 477 Saratoga Avenue a/k/a 1352-1354 East New York Avenue<br>Brooklyn, New York 11212 | 10 | Brownsville |
| 1350 Park Place<br>Brooklyn, New York 11213 | 19 | Crown Heights |
| 180 Grafton Street<br>Brooklyn, New York 11212 | 16 | Brownsville |
| 257 Mother Gaston Boulevard<br>Brooklyn, New York 11212 | 8 | Brownsville |
| 249-251 Mother Gaston Boulevard<br>Brooklyn, New York 11212 | 19 | Brownsville |

### ii.  *NBP's Business Operations*

12.    NBP is a for-profit limited liability partnership organized under the laws of New

York on or about August 29, 1991.  NBP owns and operates five residential buildings and an

additional lot (the "**NBP Buildings**"), totaling 40 units that are over 90% leased:

| Address | Units | Neighborhood |
|---------|-------|--------------|
| 409 Kosciuszko Street<br>Brooklyn, New York 11221 | 3 | Bedford-Stuyvesant |
| 403 Kosciuszko Street<br>Brooklyn, New York 11221 | 13 | Bedford-Stuyvesant |
| 399 Kosciuszko Street<br>Brooklyn, New York 11221 | 12 | Bedford-Stuyvesant |
| 397 Kosciuszko Street<br>Brooklyn, New York 11221 | Lot | Bedford-Stuyvesant |
| 675 Halsey Street, Brooklyn<br>New York 11233 | 6 | Stuyvesant Heights |
| 671 Halsey Street<br>Brooklyn, New York 11233 | 6 | Stuyvesant Heights |

### iii.    *Greene Avenue's Business Operations*

13.    Greene Avenue is a not-for-profit corporation organized under the laws of New York on or about April 1, 1994.  Greene Avenue owns and operates two residential buildings (the "**Greene Avenue Buildings**"), totaling 32 units that are over 85% leased:

| Address | Units | Neighborhood |
|---------|-------|--------------|
| 984 Greene Avenue<br>Brooklyn, New York 11221 | 16 | Bedford-Stuyvesant |
| 988 Greene Avenue<br>Brooklyn, New York 11221 | 16 | Bedford-Stuyvesant |

### The Insurance

14.    In connection with the operation of their businesses and Buildings, the Debtors maintain insurance policies that include, among other things, property, liability, automobile and umbrella coverage, as generally described below (collectively, the "**Insurance Programs**") through several insurance carriers (the "**Insurance Carriers**") as listed on <u>Exhibit B</u> attached hereto.  The Insurance Programs cover the Debtors' Buildings and are essential for their operations.

15.    The Debtors' Insurance Programs are administered under an insurance premium financing program.  The insurance premium financing agreement for the current year is attached

hereto as Exhibit C (the "**Insurance Premium Financing Agreement**").  The Debtors' coverage and Insurance Premium Financing Agreement are on a cycle that renews every year as of April 20th.  Thus, approval is sought for the current coverage year and the Insurance Premium Financing Agreement that will renew as of April 20th.  The amount and cost of the renewing coverage and financing are expected to be substantially similar to the current program.

16.    Pursuant to sections 105(a), 363(b) and 364(c) of the Bankruptcy Code, the Debtors seek an order authorizing them to continue the Insurance Programs and Insurance Premium Financing Agreement on an uninterrupted basis, and, to the extent necessary, renew the Insurance Programs and Insurance Premium Financing Agreement in accordance with the same practices and procedures that were in effect before the Petition Date, and to pay all premiums, deductibles and all other obligations arising under or in connection with the Insurance Programs (collectively, the "**Insurance Obligations**") relating to the periods before and after the Petition Date.

**Basis for Relief Requested**

**A.    Section 363(b) of the Bankruptcy Code**
**Authorizes the Debtors to Maintain their Insurance Programs**

17.    Maintaining the Debtors' insurance coverage under the Insurance Programs is a crucial ordinary-course-of-business transaction.  Authority to pay any prepetition amounts that may be due and owing under the Insurance Programs – to the extent the Debtors determine that such payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any form of impairment of the coverage, benefits or proceeds provided under the Insurance Programs – is necessary to the Debtors' continued operation.[1]  The insurance coverage provided under the Insurance Policies is essential for preserving the value of the Debtors' assets and, in most cases, such coverage is required by various facility-related contracts, as well as various regulations

---

[1]  Upon diligence it so far appears all pre-petition amounts were paid and no pre-petition amounts are due.

and state and federal laws that govern the Debtors' business operations.  *See, e.g.,* 28 U.S.C. § 959(b) (Chapter 11 debtor obligated under federal law to operate Chapter 11 business according to the laws of the states where business and properties are located).  Further, under the Chapter 11 operating guidelines issued by the United States Trustee pursuant to 28 U.S.C. § 586, the Debtors are obligated to maintain during the Chapter 11 cases certain types of insurance coverage, which coverage is provided by certain of the policies included in the Insurance Programs.

18.    In addition, the Debtors may need to renew or replace certain of their Insurance Programs during the pendency of their Chapter 11 cases.  The non-payment of any premiums, deductibles, or related fees under any of the Insurance Programs could result in one or more of the Insurance Carriers increasing future insurance premiums, declining to renew their insurance policies or refusing to enter into new insurance agreements with the Debtors.  If the Insurance Programs lapse without renewal, the Debtors may be exposed to substantial risk and liability for first party property claims and third party liability claims to the detriment of all parties in interest.

19.    Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  A bankruptcy court may use its equitable powers under section 105 of the Bankruptcy Code to permit a debtor in possession to pay pre-petition claims when payment is necessary to effectuate a debtor's bankruptcy goals and essential to the continued operation of the business. *See Miltenberger v. Logansport Railway Co.*, 106 U.S. 286 (1882).

20.    In addition, the Court may authorize the Debtors to pay pre-petition premiums to maintain insurance coverage under section 363(b) of the Bankruptcy Code.  In particular, section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Thus, under

this section, a court may authorize a debtor to pay certain pre-petition claims. *See In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175-77 (S.D.N.Y. 1989) (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code).

21.     In addition, if the Debtors are unable to continue making payments under the Insurance Premium Financing Agreement and renewal thereof, the Insurance Carriers may be permitted to terminate the Insurance Programs.  The Debtors would then be required to obtain replacement insurance on an expedited basis and at significant cost to the estates.  If the Debtors are required to obtain replacement insurance and to pay a lump sum premium for such insurance in advance, this payment may be the same or greater than what the Debtors currently pay to the financing company under the premium financing agreement.  Even if the financing company is not permitted to terminate the Insurance Programs, any interruption of payments would severely and adversely affect the Debtors' ability to finance premiums for future policies.

22.     By this Motion, the Debtors seek authority to continue performing under the Insurance Premium Financing Agreements.  In view of the importance of maintaining the insurance coverage with respect to their business activities and the preservation of the Debtors' cash flow by financing their insurance premiums, the Debtors believe it is in the best interest of creditors in these Chapter 11 cases for the Court to authorize the Debtors to honor their obligations under the Insurance Premium Financing Agreements.  Any other alternative would likely require considerable cash expenditures and would be detrimental to Debtors' Chapter 11 efforts.

**B.     Section 364(c) of the Bankruptcy Code Authorizes the Debtors to Enter into Insurance Premium Financing Agreements**

23.     Section 364(c)(2) of the Bankruptcy Code provides, in relevant part, that:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code] as an administrative expense, the court, after notice and a hearing, may authorize the

> obtaining of credit or the incurring of debt – (2) secured by a lien
> on property of the estate that is not otherwise subject to a lien.

24.     It is standard for debtors in Chapter 11 to finance insurance premiums and for insurance premium finance companies to hold a security interest in return for premiums and proceeds from the policies that they finance. *See, e.g., In re Ultra Stores, Inc.*, 2009 Bankr. LEXIS 5213 (Bankr. S.D.N.Y. Apr. 29, 2009); *In re JII Liquidating, Inc.*, 344 B.R. 875 (Bankr. N.D. Ill. 2006) (same); *In re Silver State Helicopters, LLC*, 403 B.R. 849 (Bankr. D. Nev. 2009) (discussing similar provision). The Insurance Premium Financing Agreement is standard as is apparent from the agreement as attached hereto.

25.     The Debtors propose to finance, as they have previously, in their ordinary course, as the Insurance Premium Financing Agreement renews, the annual premium plus relevant fees and taxes over twelve months. The full terms and conditions of the renewal are not yet known but are expected to be substantially similar to the current Insurance Premium Financing Agreement. Since the new term begins April 20, 2019, and because of the expiration of the prior term and the requirement to renew immediately, the Debtors now seek authorization.

26.     To the extent any Insurance Program or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, at this time, seek to assume such contract. Accordingly, if the Court authorizes the payments described above, any such payment should not be deemed to constitute a post-petition assumption or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code. Nothing in this Motion should be construed as impairing the Debtors' right to contest the amount or priority of any Insurance Obligations that may be owed to the Insurance Carriers, and the Debtors expressly reserve all of their rights with respect thereto.

## SATISFACTION OF BANKRUPTCY RULE 6003
## AND WAIVER OF BANKRUPTCY RULE 6004

27.     The Debtors seek immediate authorization for the relief contemplated by this Motion. Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Court cannot grant "a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one (21) days of the filing of the petition unless the relief is "necessary to avoid immediate and irreparable harm."  For the reasons set forth above, the Debtors submit that the requirements of Bankruptcy Rule 6003(b) are met and that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

28.     In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  For the reasons set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

### No Prior Request

29.     No previous request for the relief sought in this Motion has been made to this or any other court.

### Conclusion

30.     For the reasons set forth above, this Motion should be granted.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein, and such other and further relief as may be just and proper.

Dated:  New York, New York
       March 12, 2019

ARCHER & GREINER, P.C.

By:    s/ Allen G. Kadish
      Allen G. Kadish
      Harrison H.D. Breakstone
630 Third Avenue
New York, New York 10017
Tel:  (212) 682-4940
Email: akadish@archerlaw.com
       hbreakstone@archerlaw.com

*Proposed Counsel for Park Monroe Housing Development Fund Corporation, Northeast Brooklyn Partnership and 984-988 Greene Avenue Housing Development Fund Corporation, Debtors and Debtors-in-Possession*

## Index to Exhibits

**A**      **Proposed Order**

**B**      **Insurance Contracts**

**C**      **Insurance Premium Financing Agreement**

## **Exhibit A**

Proposed Order

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:                                              Chapter 11

PARK MONROE HOUSING DEVELOPMENT             Case No. 19-40820 (CEC)
   FUND CORPORATION,

         Debtor.

----------------------------------------------------------------x

In re:                                              Chapter 11

NORTHEAST BROOKLYN PARTNERSHIP,             Case No. 19-40822 (CEC)

         Debtor.

----------------------------------------------------------------x

In re:                                              Chapter 11

984-988 GREENE AVENUE HOUSING               Case No. 19-40823 (CEC)
   DEVELOPMENT FUND CORPORATION,

         Debtor.

----------------------------------------------------------------x

## ORDER AUTHORIZING PAYMENT IN CONNECTION WITH LIABILITY, PROPERTY, AND OTHER INSURANCE PROGRAMS, INCLUDING PAYMENT OF POLICY PREMIUMS AND OBLIGATIONS UNDER INSURANCE PREMIUM FINANCING PROGRAMS

Upon the Motion (the "**Motion**")[1] of PARK MONROE HOUSING DEVELOPMENT

FUND CORPORATION ("**Park Monroe**"), NORTHEAST BROOKLYN PARTNERSHIP

("**NBP**") and 984-988 GREENE AVENUE HOUSING DEVELOPMENT FUND

CORPORATION ("**Greene Avenue**," each a "**Debtor**" and collectively, the "**Debtors**"), debtors

and debtors-in-possession, for an order pursuant to sections 105(a), 363(b) and 363(c) of the

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Bankruptcy Code authorizing, but not directing, the Debtors to (a) continue and, to the extent necessary, renew, liability, property and other insurance programs and pay all policy premiums arising thereunder or in connection therewith, including all such prepetition obligations arising in the ordinary course of business, and (b) continue the Debtors' insurance premium financing programs, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to sections 28 U.S.C. §§ 157(a) and 1334(b); and consideration of the Motion and the relief requested therein being a core matter pursuant to 28 U.S.C. §§ 157(b)(2)(A), (D) and (O); and venue being proper before this Court pursuant to 28 U.S.C. § 1408; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice is necessary except as expressly provided herein; and there being no objections to the relief granted herein; and upon the record of the hearing held by the Court (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion, in the Debtors' First Day Declarations (as defined in the Motion), and at the Hearing, establish just cause for the relief granted herein; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and upon all of the proceedings had before the Court; and it appearing that such relief is necessary to avoid immediate and irreparable harm meaning that the requirements of Bankruptcy Rule 6003 have been satisfied; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1.     The Motion is granted to the extent set forth herein.

2.     The Debtors are authorized and empowered to maintain the Insurance Programs without interruption, on the same basis, and in accordance with the same practices and procedures as were in effect prior to the commencement of the Chapter 11 cases.

3.      The Debtors are authorized, but not required, to pay, in their sole discretion, all premiums, claims, deductibles, excess, retrospective adjustments, administrative fees, and all other Insurance Obligations including those Insurance Obligations that were due and payable or related to the period prior to the commencement of these Chapter 11 cases.

4.      The Debtors are authorized to (a) continue, in the ordinary course of business, to honor and abide by their Insurance Premium Financing Agreements, and (b) pay their regular monthly or other periodic installment payments under the Insurance Premium Financing Agreement as the same may become due in the ordinary course of business, including under a renewal as of April 20, 2019.

5.      Any payment or transfer made or service rendered by the Debtors pursuant to this Order is not, and shall not be deemed, an admission as to the validity of the underlying obligation, a waiver of any rights the Debtors may have to dispute such obligation or waiver of any other rights or remedies of the Debtors, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

7.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief in the Motion is necessary to avoid immediate and irreparable harm.

8.      The requests of Bankruptcy Rule 6004, as to a stay of the Order, are waived, and this Order shall become effective immediately.

9.      The Court shall retain jurisdiction and authority to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

215970633v2

**Exhibit B**

Insurance Contracts

| Debtor | Carrier | Policy Number | Coverage Type | Policy Term | Approx. Annual Premium |
|---|---|---|---|---|---|
| Park Monroe | Endurance American | PGL10011016701 | Commercial General Liability | 4/20/18 – 4/20/19 | $ 43,170.85 |
| Park Monroe | Endurance American | PGL10011016701 | Automobile Liability | 4/20/18 – 4/20/19 | Included |
| Park Monroe | Allied World Assurance Company | 10INSM-1819AWA #44 | Umbrella | 4/20/18 – 4/20/19 | $ 3,953.86 |
| Park Monroe | Travelers | KTQ-CMB-3J65813-7-18 | Commercial Property | 4/20/18 – 4/20/19 | $ 19,845.45 |
| Northeast Brooklyn Partnership | Endurance American | PGL10011016701 | Commercial General Liability | 4/20/18 – 4/20/19 | $ 23,983.81 |
| Northeast Brooklyn Partnership | Endurance American | PGL10011016701 | Automobile Liability | 4/20/18 – 4/20/19 | Included |
| Northeast Brooklyn Partnership | Allied World Assurance Company | 10INSM-1819AWA #44 | Umbrella | 4/20/18 – 4/20/19 | $ 2,196.59 |
| Northeast Brooklyn Partnership | Travelers | KTQ-CMB-3J65813-7-18 | Commercial Property | 4/20/18 – 4/20/19 | $ 10,157.84 |
| 984-988 Greene Avenue | Endurance American | PGL10011016701 | Commercial General Liability | 4/20/18 – 4/20/19 | $ 19,187.04 |
| 984-988 Greene Avenue | Endurance American | PGL10011016701 | Automobile Liability | 4/20/18 – 4/20/19 | Included |
| 984-988 Greene Avenue | Allied World Assurance Company | 10INSM-1819AWA #44 | Umbrella | 4/20/18 – 4/20/19 | $ 1,757.27 |
| 984-988 Greene Avenue | Travelers | KTQ-CMB-3J65813-7-18 | Commercial Property | 4/20/18 – 4/20/19 | $ 9,670.63 |

## **Exhibit C**

Insurance Premium Financing Agreement


**BankDirect**
CAPITAL FINANCE

150 North Field Drive, Suite 190
Lake Forest, Illinois 60045
Phone 877-226-5456 Fax: 877-226-5297

Quote Number: 1584026.1

COMMERCIAL INSURANCE PREMIUM
FINANCE AND SECURITY AGREEMENT

THIS COMMERCIAL INSURANCE PREMIUM FINANCE AND SECURITY AGREEMENT (this "Agreement") is between insured named below as borrower and BankDirect Capital Finance, a division of Texas Capital Bank, N.A. ("BankDirect") as lender, concerning the financing of the premium(s) for one or more commercial insurance policies listed in the Schedule of Policies below (the "Loan"). The terms of this Agreement are stated below and on all subsequent pages of this document.

| Insured / Borrower ("Insured") Name & Business Address (as stated in Policy) | Insured's Agent or Broker ("Agent") Name & Business Address |
|---|---|
| Northeast Brooklyn HDC<br>132 Ralph Ave<br>Brooklyn, NY 11233-1773 | Honig Conte Porrino Ins.<br>129 West 27th St<br>6th floor<br>New York, NY 10001 |
| Telephone Number: 718-453-9490    Taxpayer ID #: XXXXX7223 | Telephone Number: 212-777-7113    Agency Code: 8511 |

### SCHEDULE OF POLICIES (each, a "Policy")

| Policy Prefix and Number | Effective Date of Policy MM/DD/YY | Name & City of Insurance Company and Name & City of General or Policy Issuing Agent or Company Office | Type of Coverage | Policy Subject to Audit (N) | Policy Term in Months Covered | Min Earned Prem % | Days to Cancel | Short Rate (√) | Premium Amounts |
|---|---|---|---|---|---|---|---|---|---|
| KTQ-CMB-3 J65513-7-18 | 4/20/2018 | Travelers Excess and Surplus Lines Company<br>Atlantic Risk Specialists, Inc.<br>One International Blvd, Suite 350<br>Mahwah, NJ 07495 | PROPERTY | | 12 | 0% | 10 | | Premium: $268,428.00<br>Policy Fee: $300.00<br>Broker Fee: $0.00<br>Tax/Stamp: $10,119.74<br>Inspection: $0.00<br>$935,642.74 |

Additional Policies are listed on the attached Schedule of Policies

**TOTAL PREMIUMS**

| TOTAL PREMIUMS | DOWN PAYMENT | UNPAID PREMIUM BALANCE | FLORIDA DOC STAMP TAX Applicable in Florida only | AMOUNT FINANCED Amount of Loan provided to or on behalf of Insured | FINANCE CHARGE The dollar amount of interest the Loan will cost over the term of the Loan | TOTAL OF PAYMENTS Amount of interest and principal which will have been paid on the Loan after making all scheduled Loan payments | ANNUAL PERCENTAGE INTEREST RATE The cost of interest on the Loan as a yearly percentage rate. |
|---|---|---|---|---|---|---|---|
| $935,642.74 | $145,956.42 | $789,686.32 | $0.00 | $789,686.32 | $18,973.49 | $808,659.81 | 5.73% |

| Payment Schedule: The Loan payment schedule will be: | Number of Loan Payments | Amount of Each Loan Payment* | When Loan Payments are Due ("Due Dates") | |
|---|---|---|---|---|
| | | | First Due Date | Subsequent Monthly Due Dates** |
| | 9 | $89,851.09 | 5/20/2018 | 20th |

*Non-payment of the Loan may result in cancellation of any Policy.    **Subsequent payments are due on the same day of each succeeding period until paid in full.

**Prepayment:** Insured may prepay the outstanding principal balance of the Loan in full at any time. If Insured prepays the Loan in full, Insured will receive a refund of the unearned finance charge, calculated according to the Rule of 78's or the actuarial method as provided by applicable law. Minimum refund is $1.

**Security Interest:** Insured grants and grants a security interest to BankDirect as security for payment of all amounts payable under this Agreement, in all of Insured's right, title and interest in and to each Policy and all amounts which are or may become payable to Insured under or with reference to the Policies including, among other things, any gross unearned premiums, dividend payments, and all payments on account of loss which results in reduction of any unearned premium in accordance with the term(s) of said Policies.

**Delinquency Charge:** Insured agrees to pay a delinquency charge to BankDirect on any payment required to be made by Insured hereunder which is not received by BankDirect within five (5) days of its due date, unless a longer period is specified under applicable law, in which case the delinquency charge will be imposed on any payment not received by BankDirect within this longer period. The delinquency charge will be the lesser of: (1) 5% of the overdue amount or (2) the maximum delinquency charge allowed by applicable law. Cancellation Charge: If a default results in cancellation of a Policy, Insured agrees to pay a cancellation charge of $25 or the maximum amount permitted by applicable law.

**IMPORTANT INFORMATION ABOUT YOUR LOAN:** To help the Federal government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies the Insured. We will require such information as we deem reasonably necessary to allow us to properly identify you, such as your name, address and Taxpayer ID # (TIN).

**NOTICE TO INSURED:** 1. DO NOT SIGN THIS AGREEMENT UNTIL YOU READ ALL PAGES OF THE AGREEMENT AND FILL IN ANY BLANK SPACES. 2. YOU ARE ENTITLED TO A COMPLETELY FILLED IN COPY OF THIS AGREEMENT. 3. YOU UNDERSTAND AND HAVE RECEIVED A COPY OF THIS AGREEMENT, KEEP IT TO PROTECT YOUR LEGAL RIGHTS. 4. UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. 5. SEE ADDITIONAL PAGES FOR IMPORTANT INFORMATION.

**REPRESENTATIONS AND WARRANTIES:** The undersigned Agent and Insured have read the Representations and Warranties on page two of this document, make all such representations and warranties and understand that BankDirect will rely on all such representations and warranties in determining whether or not to accept this Agreement, and agree to be bound by the terms of this Agreement. Insured further acknowledges that upon satisfactory completion of the Agreement, the undersigned Agent may receive a fee from BankDirect for the origination and administration of this Agreement as allowed by applicable law.

All Insured's must sign as named in Policies. If corporation, authorized officers must sign; if partnership, partner must sign as such; signatory acting by representative capacity represents that has authorized this transaction and has authorized signatory in receive of notices hereunder. By signing below Insured agrees to make all payments required by this Agreement and to be bound by all provisions of this Agreement, including those on page two. Insured is not required to enter into an insurance premium financing arrangement as a condition to the purchase of any insurance policy.

(Signature of Agent)

(Title)                          (Date)

X _____
(Signature of Insured)

Nathaniel Montgomery    04/23/18
(Printed Name & Title)                          (Date)

BANKDIRECT 1 040114 -DS

Name of Insured: Northeast Brooklyn HDC          Total Premiums: $935,642.74

## Schedule of Policies

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY MM/DD/YY | NAME & CITY OF INSURANCE COMPANY AND NAME & CITY OF GENERAL AGENT OR COMPANY OFFICE | TYPE OF COVERAGE | POLICIES SUBJECT TO AUDIT (✓) | TERM IN MONTHS COVERED | MIN EARNED PREM | DAYS TO CANCEL | SHORT RATE (✓) | PREMIUM AMOUNTS |
|---|---|---|---|---|---|---|---|---|---|
| PGL10011016 701 | 4/20/2018 | Endurance American Specialty Ins Co<br>Atlantic Risk Specialists, Inc.<br>One International Blvd, Suite 350<br>Mahwah, NJ 07495 | GENERAL LIABILITY | | 12 | 0% | 10 | | Premium: $595,000.00<br>Policy Fee: $0.00<br>Broker Fee: $0.00<br>Tax/Stamp: $0.00<br>Inspection: $2,500.00 |
| 08-44-10INS M-1819WA | 4/20/2018 | Allied World Assurance Co.<br>Atlantic Risk Specialists, Inc.<br>One International Blvd, Suite 350<br>Mahwah, NJ 07495 | UMBRELLA | | 12 | 0% | 10 | | Premium: $51,863.00<br>Policy Fee: $3,500.00<br>Broker Fee: $0.00<br>Tax/Stamp: $0.00<br>Inspection: $0.00 |
| UTS2557717. 18 | 4/20/2018 | Hiscox USA Group<br>416 South Second Street Geneva, IL 601340520 | TERRORISM | | 12 | 0% | 10 | | Premium: $3,500.00<br>Policy Fee: $300.00<br>Broker Fee: $0.00<br>Tax/Stamp: $132.00<br>Inspection: $0.00 |
| | | | | | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: |
| | | | | | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: |
| | | | | | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: |
| | | | | | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: |
| | | | | | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: |
| | | | | | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: |
| | | | | | | | | | Premium:<br>Policy Fee:<br>Broker Fee:<br>Tax/Stamp:<br>Inspection: |
| | | | | | | | PAGE 3 TOTALS | | $656,795.00 |

**Name of Insured:** Northeast Brooklyn HDC

**Total Premiums:** $953,442.40

Insured (jointly and severally if more than one) agrees as follows:

**1. Promise to Pay.** In consideration of the payment by BankDirect of the Amount Financed, Insured agrees to pay the Down Payment to the insurance company(ies) listed in the Schedule of Policies, and Insured agrees to pay to the order of BankDirect all of the principal amount of the Loan, all interest thereon and all other amounts payable by Insured hereunder in accordance with the Payment Schedule and the other terms of this Agreement.

**2. Representations and Warranties.** Insured represents and warrants that: (a) the Policies are in full force and effect; (b) the proceeds of the Loan are to be used to purchase insurance for business or commercial purposes; (c) all information provided herein or in connection with this Agreement is true, correct, complete and not misleading; (d) Insured has no indebtedness to the insurers issuing the Policies; (e) Insured is not insolvent nor presently the subject of any insolvency proceeding; and (f) the person signing this Agreement on behalf of Insured is authorized to do so.

**3. Power of Attorney.** Insured hereby irrevocably appoints BankDirect as Attorney-in-Fact with full power of substitution and full authority upon the occurrence of an Event of Default (defined below) to (i) effect cancellation of the Policies, (ii) receive any unearned premium or other amounts with respect to the Policies assigned as security herein, (iii) sign any check or draft issued therefore in Insured's name and to direct the insurance companies to make said check or draft payable to BankDirect and (iv) sign any other instrument or document in the name of and on behalf of Insured to effectuate the purposes of this Agreement. Insured agrees that this appointment and authority cannot be revoked and is coupled with an interest and will terminate only after Insured's obligations under this Agreement are paid in full. Insured agrees that proof of mailing any notice hereunder constitutes proof of receipt of such notice.

**4. Payments Received after Notice of Cancellation.** Insured agrees that any payments made and accepted after a Notice of Cancellation has been sent to any insurance company do not constitute reinstatement or obligate BankDirect to request reinstatement of such Insurance Policy(ies), and Insured acknowledges that BankDirect has no authority or duty to reinstate coverage, and that such payments may be applied to Insured's obligations hereunder or under any other agreement with BankDirect, and any such payments will not affect BankDirect's rights or remedies under this Agreement.

**5. Assignments.** Insured agrees not to assign any rights, interests or obligations under-any Policy or this Agreement without the prior written consent of BankDirect, except that BankDirect's consent is not required for the rights or interests of mortgagees and loss payees. BankDirect may assign its rights and interests under this Agreement without Insured's consent, and all rights and interests conferred upon BankDirect under this Agreement shall inure to BankDirect's successors and assigns.

**6. Insufficient Funds (NSF) Fees.** If an Insured's check or electronic funding is dishonored for any reason, Insured agrees to pay BankDirect a fee equal to $25 or the maximum amount permitted by applicable law.

**7. Default.** An Event of Default occurs when: (a) Insured does not pay any installment according to the terms of this Agreement or any other agreement; (b) Insured fails to comply with any of the terms of the Agreement; (c) any of the Policies are cancelled for any reason; (d) Insured or its insurance companies are insolvent or involved in a bankruptcy or similar proceeding as a debtor; (e) premiums increase under any of the Policies and Insured fails to pay such increased premiums within thirty (30) days of the notification; or (f) Insured is in default under any other agreement with BankDirect.

**8. Rights Upon Default.** If an Event of Default occurs, BankDirect may at its option pursue any and all rights and remedies available, including but not limited to, the following: demand and receive immediate payment of the Loan and any other unpaid amounts due under this Agreement regardless of whether BankDirect has received any refund of unearned premium. BankDirect may take all necessary actions to enforce payment of any unpaid amounts due hereunder. To the extent not prohibited or limited by applicable law, BankDirect is entitled to collection costs and expenses paid or incurred by BankDirect as a result of or in connection with enforcing its rights and remedies under this Agreement and applicable law and to reasonable attorneys' fees if this Agreement is referred to an attorney who is not a salaried employee of BankDirect for collection or enforcement. BankDirect may cancel any or all of the Policies and collect any unearned premiums or other amounts payable under said Policies. Unearned premiums shall be payable to BankDirect only.

**9. Right of Offset.** BankDirect may offset and deduct from any amounts BankDirect owes to Insured with respect to the Policies financed hereunder, any amounts which Insured owes to BankDirect under this Agreement or any other agreement to the extent permitted by applicable law.

**10. Finance Charge.** The Finance Charge includes interest on the outstanding principal amount of the Loan. The Finance Charge is computed using a 365-day year. Interest on the Loan shall accrue from the Effective Date of this Agreement or the earliest policy effective date indicated in the Schedule of Policies,whichever is earlier, and continue to accrue until the Loan is paid in full. If BankDirect terminates this Agreement after an Event of Default, Insured will pay interest on the outstanding principal balance of the Loan at the maximum rate permitted under applicable law from the date of such termination until Insured pays the Loan and all other amounts due under this Agreement in full.

**11. Additional Premiums.** Insured agrees to promptly pay to each applicable insurance company any additional premiums due on any Policy.

**12. Agent.** Agent is not the agent of BankDirect and Agent cannot bind BankDirect in any way. BankDirect is not Agent of any insurer and is not liable for any acts or omissions of any insurer. Agent is the agent of Insured, and Insured acknowledges that it has chosen to do business with Agent and the insurance companies issuing the Policies, and that the insolvency, fraud, defalcation or other action or failure to act by any of them shall not relieve or diminish Insured's obligations to BankDirect hereunder.

**13. Corrections.** Except if prohibited by applicable law, BankDirect may correct any errors or omissions in this Agreement and if not known or corrected at the time of signature by or for Insured.

**14. Force or Effect.** This Agreement shall have no force or effect until accepted in writing by BankDirect.

**15. Limitation of Liability: Claims Against BankDirect. Neither BANKDIRECT nor its assignee shall be liable for any loss or damage to the Insured by reason of failure of any insurance company to issue or maintain in force any of the Policies or by reason of the exercise by BANKDIRECT or its assignee of the rights conferred herein, including but not limited to BANKDIRECT's exercise of the right of cancellation, except in the event of willful or intentional misconduct by BANKDIRECT.**

**16. Governing Law.** This Agreement is governed by and construed and interpreted in accordance with the laws of the state where BankDirect accepts this Agreement. BankDirect shall, at its option, prosecute any action to enforce its rights and remedies hereunder in the Circuit Court of Cook County, Illinois, and Insured (i) irrevocably waives any objection to such venue and (ii) will honor any order issued by or judgment enforced in such court.

**17. Miscellaneous.** All rights and remedies in this Agreement are cumulative and not exclusive. If any provision of this Agreement is determined to be invalid or unenforceable under applicable law, the remaining provisions of this Agreement shall continue to be in full force and effect. This Agreement constitutes the entire agreement between BankDirect and Insured with respect to its subject matter and may not be modified except as agreed upon in writing. BankDirect's acceptance of late or partial payments shall not be deemed a waiver by BankDirect of any provisions of this Agreement, and BankDirect is entitled to require Insured to strictly comply with the terms hereof. If any amount contracted for or received by BankDirect hereunder is determined to violate any applicable law, BankDirect may return such prohibited amount to Insured without any further liability therefor or in respect thereof to the fullest extent permitted by law. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of Insured and Agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy.

**18. CALIFORNIA RESIDENTS: FOR INFORMATION CONTACT THE DEPARTMENT OF CORPORATIONS, STATE OF CALIFORNIA.**

Insured agrees that, in accordance with Section 18608 of the California Financial Code, BankDirect's liability to Insured upon the exercise of BankDirect's authority to cancel the Policies shall be limited to the amount of the principal balance of this loan, except in the event of BankDirect's willful failure to mail the notice of cancellation required under California law.

**New York Residents:** No charges imposed for obtaining and servicing the financed policies, pursuant to Section 2119 (formerly 129) of the New York Insurance Laws, are financed hereunder unless specified in the Schedule of Policies.

---

**In connection with the Policies scheduled herein, Agent represents and warrants to BankDirect and its successors and assigns that:**

**1. Payment.** Agent shall remit all funds received from BankDirect and Insured promptly to the insurance company(ies) issuing the financed policy(ies). Agent shall segregate and hold all payments received by it from Insured or any insurance company listed in the Schedule of Policies with respect to the Loan or this Agreement in trust for BankDirect, shall have no right or interest in any such payments and shall immediately deliver all such payments to BankDirect for application to Insured's obligations hereunder.

**2. Signatures Genuine.** Insured's signature on both pages of this Agreement is genuine and authorized.

**3. Authorization By Insured.** If this Agreement has been signed by Agent on behalf of Insured, Agent has been fully authorized to sign this Agreement on behalf of Insured and Insured has authorized this transaction. Agent has given Insured a complete copy of this Agreement.

**4. Authority of Agent.** For each Policy, Agent signing this Agreement is either the authorized policy-issuing agent of the issuing insurance company(ies) or the broker placing the coverage directly with the issuing insurance company(ies), except as indicated on the Schedule of Policies. The person signing this Agreement on behalf of Agent is authorized to do so. Agent is neither authorized to receive any payments from Insured under this Agreement nor to make any representations to Insured for or on behalf of BankDirect.

**5. Not Agent of BankDirect.** Agent is not an agent of BankDirect and is not authorized to bind BankDirect and has not made any representation to the contrary.

**6. Recognition of Assignment.** Agent recognizes the security interest granted in this Agreement, whereby Insured assigns to BankDirect all unearned premiums, dividends and certain loss payments. Upon cancellation of any of the Policies, Agent agrees to pay BankDirect all unearned commissions and unearned premiums upon receipt. If such funds are not remitted to BankDirect within ten (10) days of receipt by Agent, Agent agrees to pay BankDirect interest on such funds at the maximum rate permitted under applicable law. Agent shall not deduct any amounts which Insured owes to Agent from any amounts owing to BankDirect hereunder.

**7. Down Payment.** The down payment and any other payments due from Insured which Agent has agreed to collect, have been collected from Insured.

**8. Policies:** (a) are all cancelable by standard short-rate or pro-rata tables; (b) are not audit or reporting form policies or policies subject to retrospective rating, unless so indicated on the Schedule of Policies in this Agreement, and if so indicated, the deposit premiums are not less than the anticipated premiums to be earned for the full term of the Policies; (c) upon cancellation by Insured or BankDirect, do not require advance notice of cancellation to any party, other than any notice required to be given by BankDirect; (d) are in full force and effect and the premiums indicated are correct for the term of the Policies; (e) have not been financed on an installment payment plan provided by the insurance company(ies); (f) are all cancelable policies; (g) are written for a term of at least one year; (h) are not for personal, family or household purposes; and (i) have no exceptions other than those indicated and comply with BankDirect's eligibility requirements. All information in this Agreement pertaining to the Policies is complete and correct.

**9. Insured:** (a) has not paid for the Policies other than as described in this Agreement; (b) has received a copy of this Agreement; and (c) is not the subject of any proceeding in bankruptcy, receivership or insolvency, or if Insured is the subject of such a proceeding, it is noted on the Agreement in the space in which Insured's name and address is placed. All information in this Agreement pertaining to Insured is complete and correct.

**10. Miscellaneous.** Agent agrees to indemnify and pay BankDirect for and hold BankDirect harmless from and against any losses, costs, damages, fees and expenses (including reasonable attorneys' fees, court costs and collection costs) paid or incurred by BankDirect or its assignee as a result of or in connection with any untrue or misleading representation or warranty made by Agent hereunder, any breach by Agent of this Agreement, any error committed by Agent in completing or failing to complete any portion of this Agreement, or any violation by Agent of any applicable law. Agent shall promptly notify BankDirect of any unpaid increased premiums for the Policies. This Agreement is a valid and enforceable agreement between BankDirect and Agent and there are no defenses to it.

| Northeast BRBBHP Buildings | Property Original | Property Reduction | Property Total | Tax | Company Fee | Liability | Inspection | Umbrella | Umbrella Fee | Terrorism | Total Premium | Downpayment by others | Downpayment by Northeast | Balance Financed | 9 Monthly Installments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 984-988 GREENE AVENUE HDFC | 9,904.14 | -594.88 | 9,309.27 | 350.96 | 10.40 | $19,109.31 | $77.73 | $1,646.18 | $111.09 | | $30,614.95 | | | $30,614.95 | $3,483.39 |
| NORTHEAST BROOKLYN PARTNERSHIP | 10,403.12 | -624.65 | 9,778.27 | 368.64 | $10.93 | $23,886.64 | $97.17 | $2,057.72 | $138.67 | | $30,338.24 | *CPC $0.00 870 CPC to pay | | $36,338.24 | $4,134.59 |
| PARK MONROE HDFC | 20,324.65 | -1,220.77 | 19,103.68 | 720.22 | $21.35 | $42,995.95 | $174.90 | $3,703.90 | $249.06 | | $66,970.16 | No funds | | $66,970.16 | $7,619.91 |