| | |
|---|---|
| **Hearing Date:** | **August 14, 2019 at 2:00 p.m.** |
| **Objection Date:** | **August  7, 2019 at 4:00 p.m.** |

| | |
|---|---|
| Benjamin Mintz | Samar Katnani |
| Arnold & Porter Kaye Scholer LLP | Jane Landry-Reyes |
| 250 West 55th Street | Brooklyn Legal Services NYC |
| New York, New York 10019 | 105 Court St. 4th floor |
| Telephone:  (212) 836-8000 | Brooklyn, NY 11201 |
| | Telephone: (718) 237-5500 |

*Attorneys for certain Tenants*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re:

                                            Chapter 11

Park Monroe Housing Development
Fund Corporation, *et al.*,
                                          Case No.    19-40820 (CEC)
                                          (Jointly Administered)

Debtors.

------------------------------------------------------------x

## <u>NOTICE OF HEARING ON MOTION FOR THE ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE</u>

          **PLEASE TAKE NOTICE**, that upon the annexed motion pursuant to 11 U.S.C.

§ 1104(a) and Federal Rules of Bankruptcy Procedure 2007.1 for the entry of an order directing

the appointment of a Chapter 11 trustee in the above-captioned case (the "**Motion**"), filed by the

tenants (each a "**Tenant**" and collectively, the "**Tenants**")[1] on July 23, 2019, Tenants will move

before the Honorable Carla E. Craig, Chief United States Bankruptcy Judge, United States

Bankruptcy Court, Eastern District of New York, Conrad B. Duberstein Courthouse, 271-C

---

[1]      The represented Tenants are as follows:  Willie Loadholdt, Pamela Tyler, Myra Toombs, Yessenia Medina, Lorna Page, Alva Haywood, Wakina Ward, Ester Clarke, Shuntelle King, Rebecca Garcia, Tameeka Hankerson, Diane Robinson, Elizabeth Oyabade, Donna Matthews, Latoya Wiggins, Akheem Ali Shabazz, Deana Miller, Cheryl Warren, Suzan Blondet, Dino Perera, Robin Page, Lorraine Wignon, Trevor Ramsey, Sekou Fofana, Anna Caliste, Debra King, Carline Perry, Makuna Mtambuzi, Nicole Holder, Sandra Telford, Gail Tolbert, David Pratt, Annette Dingle, Tammie Brown,  Lonnie Love, Karen Chestnut, and Trudy Davis.

Cadman Plaza East, Courtroom 3529, Brooklyn, NY 11201-1800, **on the 14th day of August, 2019, at 2:00pm** of that day, or as soon thereafter as counsel can be heard (the "**Hearing**"), why an order should not be issued and entered granting the relief requested in the Motion.

**PLEASE TAKE FURTHER NOTICE**, that all responses or objections, if any, to the Motion shall be made in writing, shall state with particularity the grounds therefor, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York and shall be filed with the Court and served upon undersigned counsel for Tenants and all other parties in interest to the above captioned case so as to be actually received by no later than August 7, 2019, at 4:00 p.m.

Dated: New York, New York
        July 23, 2019

By:     _s/ Benjamin Mintz_
        Benjamin Mintz
        Arnold & Porter Kaye Scholer LLP
        250 West 55th Street
        New York, New York 10019
        Telephone: (212) 836-8505
        Facsimile: (212) 836-6550


        Samar Katnani
        Jane Landry-Reyes
        Brooklyn Legal Services NYC
        105 Court St. 4th floor
        Brooklyn, NY 11201
        Telephone: (718) 237-5500

        *Attorneys for Certain Tenants*

2

| | |
|---|---|
| **Hearing Date:** | **August 14, 2019 at 2:00 p.m.** |
| **Objection Date:** | **August  7, 2019 at 4:00 p.m.** |

Benjamin Mintz
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, New York 10019
Telephone:  (212) 836-8000

Samar Katnani
Jane Landry-Reyes
Brooklyn Legal Services NYC
105 Court St. 4th floor
Brooklyn, NY 11201
Telephone: (718) 237-5500

*Attorneys for certain Tenants*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:

                                            Chapter 11

Park Monroe Housing Development
Fund Corporation, *et al.*,                    Case No.    19-40820 (CEC)
                                             (Jointly Administered)

Debtors.
-------------------------------------------------------------x

# TENANTS' MOTION FOR THE ENTRY OF AN ORDER DIRECTING
## THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................4

FACTUAL BACKGROUND ...................................................................................................6

    Filing of Bankruptcy Proceeding .......................................................................................8

    Open Violations at Debtors' Buildings ...............................................................................9

        Park Monroe Buildings .................................................................................................10

        Northeast Brooklyn Partnership Buildings ..................................................................11

        Greene Avenue Buildings ..............................................................................................12

    Stay Relief Motion/Debtors' Commitment to Complete Repairs by August 14 ...............12

    Debtors' Multiple Violations of Stay Stipulation .............................................................14

    City's Motion for Stay Relief, Dismissal or Appointment of a Trustee ...........................14

JURISDICTION AND VENUE ............................................................................................15

ARGUMENT ........................................................................................................................15

    **A.**    The Appointment of a Chapter 11 Trustee is Required Under Section
          1104(a)(1) of the Bankruptcy Code .........................................................................16

    **B.**    The Appointment of a Chapter 11 Trustee is Required Under Section
          Under Section 1104(a)(2) of the Bankruptcy Code .................................................20

NOTICE ...............................................................................................................................23

CONCLUSION......................................................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aardvark, Inc.*,
  No. 96-858, 1997 WL 129346 (D. Del. Mar. 4, 1997) ...........................................14

*In re Ancona*,
  No. 14-10532, 2016 Bankr. LEXIS 4114 (Bankr. S.D.N.Y. Nov. 30, 2016) .........................14

*In re Ashley River Consulting, LLC*,
  No. 14-13406, 2015 Bankr. LEXIS 1008 (Bankr. S.D.N.Y. Mar. 31, 2015) ..............12, 14, 16

*In re Eljamal*,
  No. 17-CV-7870, 2018 U.S. Dist. LEXIS 169658 (S.D.N.Y. Sept. 28, 2018)......................16

*In re Euro-Am. Lodging Corp.*,
  365 B.R. 421 (Bankr. S.D.N.Y. 2007) ...................................................................12

*In re Eurospark Industries, Inc.*,
  424 B.R. 621 (Bankr. E.D.N.Y 2010)...................................................................12

*In re Friarton Estates Corp.*,
  65 B.R. 586 (Bankr. S.D.N.Y. 1986) ...................................................................13

*In re Ionosphere Clubs, Inc.*,
  113 B.R. 164 (Bankr. S.D.N.Y. 1990)...................................................................16

*In re Marvel Entm't Grp., Inc.*,
  140 F.3d 463 (3d Cir. 1998)...................................................................14, 16

*Mfrs. and Traders Tr. Co. v. Morningstar Marketplace, Ltd. (In re Morningstar Marketplace, Ltd.)*,
  544 B.R. 297 (Bankr. M.D. Pa. 2016) ...................................................................17

*In re Ridgemour Meyer Props., LLC.*,
  413 B.R. 101 (Bankr. S.D.N.Y 2008)...................................................................16

*Saravia v. 1736 18th Street, N.W., Ltd. P'ship*,
  844 F.2d 823 (D.C. Cir. 1988) ...................................................................13

*In re Sharon Steel Corp.*,
  86 B.R. 455 (Bankr. W.D. Pa. 1988), *aff'd* 871 F.2d 1217 (3d Cir. 1989)............................15

*Taub v. Adams*,
  No. 10-CV-02600, 2010 WL 8961434 (E.D.N.Y. 2010) .........................................12

ii

*In re Taub*,
    427 B.R. 208 (Bankr. E.D.N.Y. 2010)...............................................................................17, 18

*USHA SoHa Terrace, LLC v. RGS Holdings, LLC (In re Futterman)*,
    584 B.R. 609 (Bankr. S.D.N.Y. 2018) ............................................................................12, 16

**Statutes, Rules, and Regulations**

11 U.S.C. § 1104(a)(1)...............................................................................................11, 12, 14, 16

11 U.S.C. § 1104(a)(2)...................................................................................................12, 16, 17

11 U.S.C. § 1104(c) ..............................................................................................................11

28 U.S.C. § 157....................................................................................................................11

28 U.S.C. § 959(b) ...........................................................................................................3, 13

28 U.S.C. §§ 1408 & 1409 ...................................................................................................11

Federal Rules of Bankruptcy Procedure Rule 2007.1.........................................................1, 20

N.Y. Real Property Law § 235-b ..........................................................................................13

N.Y. State Multiple Dwelling Law ..........................................................................................4

NYC Admin. Code, title 27, chapter 2.....................................................................................4

NYC Admin. Code § 27-12011 ..............................................................................................13

The tenants (each a "**Tenant**" and collectively, the "**Tenants**")[1], by and through their undersigned counsel, move this court (the "**Motion**") for an entry of an order directing the appointment of a Chapter 11 trustee in the above-captioned Chapter 11 case in accordance with sections 105(a) and 1104(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2007.1 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  In support hereof, the Tenants respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The facts of this case easily meet the standard for the appointment of a trustee.  The Debtors have grossly mismanaged the apartment buildings they operate in stark violation of multiple laws.  The buildings operated by the Debtor where the Tenants, as well as other tenants at the Debtors' buildings, currently live have had and continue to have serious and hazardous conditions.  The conditions include, but are not limited to, lack of heat, lack of hot water, vermin, mold, insects, lead paint, missing walls, and leaky pipes.  The Debtor's failure to correct these conditions breach the warranty of habitability, run afoul of applicable New York City and State laws, and jeopardize the Tenants' health, welfare and safety.

2.      Despite being on actual notice of these issues, for the first four months of the case (through the end of June), the Debtors utterly failed to take any meaningful action to rectify these problems.  At the last hearing before the Court (June 26, 2019), the Tenants agreed to afford the Debtors one last chance to remedy the outstanding issues and agreed upon a protocol under which the Tenants would provide a series of access dates for the Debtors to inspect and repair the

---

[1]      The represented Tenants are as follows:  Willie Loadholdt, Pamela Tyler, Myra Toombs, Yessenia Medina, Lorna Page, Alva Haywood, Wakina Ward, Ester Clarke, Shuntelle King, Rebecca Garcia, Tameeka Hankerson, Diane Robinson, Elizabeth Oyabade, Donna Matthews, Latoya Wiggins, Akheem Ali Shabazz, Deana Miller, Cheryl Warren, Suzan Blondet, Dino Perera, Robin Page, Lorraine Wignon, Trevor Ramsey, Sekou Fofana, Anna Caliste, Debra King, Carline Perry, Makuna Mtambuzi, Nicole Holder, Sandra Telford, Gail Tolbert, David Pratt, Annette Dingle, Tammie Brown,  Lonnie Love, Karen Chestnut, and Trudy Davis.

conditions in Tenants' apartments. To date, the Debtors' actions and efforts have been disappointing and have fallen far short of their commitment in the June 26, 2019 agreement. Specifically, although the Debtors have started some repairs in a handful of apartments, the large majority of apartments have not been addressed in a material way. For many apartments, the Debtors have only conducted inspections without commencing any meaningful work, and in most cases those inspections were frankly unnecessary because the conditions and problems at the apartments are long-standing and well known to the Debtors. Further, with respect to a substantial number of apartments, the Debtors have failed to appear at all on the scheduled access dates. This inaction is especially egregious and disrespectful considering many Tenants took time off from work and lost wages or used vacation days, only to be stood up by the Debtors. Moreover, a number of the Tenants that have had some of their conditions addressed remain concerned that the Debtors are only making cosmetic repairs and not addressing underlying issues. For example, where there have been ongoing leak or mold issues, the Debtors seem to be merely painting over the leaks or mold and not remedying the underlying source of the leaks or mold, meaning that the leaks or mold will re-occur sometime in the near future. And there are significant fears that the heating issues which have been a long-standing fundamental problem at the buildings has not been and will not be addressed, and the Tenants will again suffer through another Winter.

3.    The Debtors are required under 28 U.S.C. § 959(b) to comply with applicable law. This includes applicable housing laws under New York State and City Laws (*e.g.*, New York State Real Property Laws, NYC Housing Maintenance Code, and the New York State Multiple Dwelling Law). The Debtors have utterly and consistently failed to comply with these legal requirements in regard to the apartments and buildings.

US 165292473v6

4.      This evidences incompetence and gross mismanagement of the Debtors' affairs, and otherwise supports a finding for cause under § 1104.  The appointment of an independent fiduciary is critical to ensure that the Tenants' unconscionable living conditions, which place their very lives and health at risk, are adequately attended to and rectified.

5.      Notwithstanding the filing of this Motion, the Tenants intend to continue to work in good faith to provide access to the Debtors to afford them the opportunity to make the necessary repairs through the August 14, 2019 hearing date.  However, as the date hereof, based on the Debtors' actions and inactions following the June 26, 2019 hearing, the Tenants do not have a high degree of confidence that the Debtors will satisfy their commitment to complete the repairs by August 14, 2019.

## **FACTUAL BACKGROUND**

6.      The Debtors collectively operate twelve residential buildings in Brooklyn, which contain low income or subsidized apartment units.

7.      Northeast Brooklyn Housing Development Corporation ("**NEBHDCo**"), a non-debtor corporate affiliate of each of the Debtors, acts as the property manager for each of the Debtors' buildings and provides maintenance services pursuant to the terms of property management and janitorial agreements that NEBHDCo entered into with each Debtor.

8.      Each Tenant is currently a tenant of an apartment unit located in a building owned by one of the Debtors.  The Tenants have been suffering for many years in these poorly maintained buildings with deplorable conditions.  The Debtors have been on notice of these conditions due to the numerous NYC Department of Housing Preservation and Development ("**HPD**") violations issued by New York City to the Debtors both pre- and post-petition, as well as numerous Housing Quality Standards ("**HQS**") violations issued by New York City Housing Authority ("**NYCHA**") to the Debtors for those Tenants with Section 8 vouchers.  In addition, counsel for the Tenants

6

have repeatedly provided to Debtors' counsel a detailed list of critical repairs in addition to the HPD violations that the Debtors are required to make both in the Tenants' individual apartments and in the common areas of the buildings.

9.      In 2018, prior to the Petition Date, Brooklyn Legal Services NYC, on behalf of approximately seventeen Tenants, brought HP proceedings[2] in New York City Housing Court against the Debtors, NEBHDCo, and certain non-debtor affiliates of the Debtors (collectively, the "**Landlords**") in order to compel the Landlords to comply with their obligations to the Tenants under the applicable leases and New York City and State law including the NYC Housing Maintenance Code (New York City Administrative Code, title 27, chapter 2) and the New York State Multiple Dwelling Law) to repair and maintain the apartment units in habitable conditions. The HP proceedings had been initiated because Debtors' buildings are poorly maintained and have problems including, but not limited to, lack of heat, lack of hot water, mold, rats, roaches, water bugs, chronic leaks, broken intercoms, lead paint, and broken lobby and apartment doors.

10.      On February 1, 2019, the HP proceedings against Debtor Park Monroe Housing Development Fund Corporation (*Haywood v. Park Monroe,* L&T HP Index # 3477/18-KI) and Debtor Northeast Brooklyn Partnership (*Mtambuzi et al. vs. Northeast Brooklyn Partnership*, L&T HP Index # 3539/18-KI) were settled (as to the conditions-related causes of action) with the parties entering into a Consent Order which bound the Debtors to make needed repairs or face contempt and civil penalties.

---

[2]      Under New York State law, if a tenant "ha[s] conditions or violations in [their] home which need to be repaired, including lack of heat and hot water or lack of other services, or have other emergency conditions, [they] may begin a proceeding against the landlord to force the landlord to make repairs and correct building violations. This is called a HP proceeding." *See* https://nycourts.gov/courts/nyc/housing/startinghp.shtml.

7

11.     Ten days after entering the settlement agreements, the Debtors filed chapter 11 cases under the Bankruptcy Code.  Pursuant to the automatic stay inherent in chapter 11 cases, any potential enforcement actions pursuant to the settlement agreements were stayed.  To date, notwithstanding the parties' settlement of the HP proceedings and the Consent Order that was entered into in Housing Court, and the Debtors' obligations under applicable law, the Debtors have failed to address these fundamental problems at the buildings in a satisfactory manner.  As a result, the Tenants continue to live in apartments with serious unsafe and unhealthy conditions making them uninhabitable in violation of law.  For Tenants with Section 8 subsidies, these conditions also potentially jeopardize their entitlement to their vouchers, which would eliminate the ability of those Tenants to afford their apartments going forward.

### Filing of Bankruptcy Proceeding

12.     On February 11, 2019 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

13.     The Debtors are operating as debtors-in-possession, and no committee, trustee or examiner has been appointed in the Debtors' chapter 11 cases.

14.     On March 12, 2019, the Debtors filed a cash collateral motion and proposed interim order, in which the Debtors allocated insufficient amounts for necessary repairs and maintenance of the apartments of their tenants in their respective 13-week cash flow projections.[3]  Certain of the Tenants and the City of New York objected to the Debtors' cash collateral motion and the entry of an interim order.  To resolve those objections, the Debtors committed to provide regular monthly reporting regarding the status and condition of the apartments and buildings and pending repairs.

---

[3]     *See Tenants' Limited Objection  to Debtor' Cash Collateral Motion* [Dkt. No. 43]; *Motion of Debtors for Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing* [Dkt. No. 22; 22-1].

Contrary to their commitment, the Debtors have not filed any reports in the more than two months since the cash collateral hearing.[4]

### Open Violations at Debtors' Buildings

15.    Half of the Debtors' buildings have been forced into HPD's Alternative Enforcement Program ("**AEP**") for an extended time.  That program identifies the 200 most severely distressed multiple dwelling buildings city-wide and gives the owner of that building a set amount of time to correct the qualifying conditions in the building to be removed from the program.  If the conditions are not corrected, HPD may hire a contractor to make repairs at the owner's expense.  As a consequence, HPD has been undertaking its own efforts to maintain the Debtors' buildings which are in AEP.  As a result, the Debtors have accumulated and are continuing to accumulate daily fines.

16.    For purposes of this Motion, the Tenants obtained a list of the HPD violations within all of the Debtor's buildings as of July 17, 2019.[5]  Even the buildings that were not selected to participate in AEP have many hazardous and immediately hazardous conditions. As detailed below, as of such date, across the Debtors' twelve buildings, there are **193 Class A (non-hazardous) violations, 533 Class B (hazardous) violations, and 124 Class C (immediately hazardous) violations.**[6]  These violations include:

---

[4]        In response to Tenants' Motion for Relief from Automatic Stay [Dkt. No. 68], discussed below, Debtors filed a *Declaration of Jeffrey E. Dunston Regarding Building Repair and Maintenance* [Dkt. No. 84].  This declaration did not comply with the Debtors' reporting obligation because, among other reasons, it did not provide repair details on an apartment-by-apartment basis.

[5]        A list of open violations at multi-family dwellings in New York City can be obtained from the HPD building info website located at https://www1.nyc.gov/site/hpd/index.page.

[6]        In these proceedings, the Debtors have noted that there is a time lag in how quickly HPD updates the violation list and reflects repairs.  Even if the Debtors' explanation is correct, that explanation only addresses a very small subset of the hundreds of violations identified by HPD.

US 165292473v6

a.  Water leaks (180 Grafton);

b.  Broken or defective plastered surfaces; most likely a missing wall (180 Grafton);

c.  Infestation of mice and roaches (180 Grafton);

d.  Broken windows (180 Grafton);

e.  Broken lock on building's front door (251 Mother Gaston);

f.  Missing carbon monoxide detectors (251 Mother Gaston);

g.  Missing smoke detectors (257 Mother Gaston);

h.  Defective hot water heater (257 Mother Gaston);

i.  10 square feet of mold (399 Kosciuszko);

j.  Peeling lead paint (399 Kosciuszko);

k.  Infestation of bed bugs (1350 Park);

l.  Broken waste pipes (1350 Park).

*Park Monroe Buildings*

17.      Debtor Park Monroe Housing Fund Development Corporation owns and operates five residential buildings.

18.      At 1350 Park Place, a building in AEP with 19 apartment units, there are 178 open violations, including 37 Class A (non-hazardous) violations, 99 Class B (hazardous) violations, and 41 Class C (immediately hazardous) violations.  A list of the open violations at 1350 Park Place is attached as **Exhibit A** to the Declaration of Benjamin Mintz dated July 23, 2019 filed in support of the Motion (the "**Mintz Declaration**").

10

19.     At 180 Grafton Street, a building in AEP with 16 apartment units, there are 132 open violations, including 21 Class A violations; 97 Class B violations; and 13 Class C violations. A list of the open violations at 180 Grafton Street is attached as **Exhibit B** to the Mintz Declaration.

20.     At 251 Mother Gaston Boulevard, a building in AEP with 19 apartment units, there are 128 open violations, including 14 Class A violations; 91 Class B violations; and 21 Class C violations.  A list of the open violations at 251 Mother Gaston Boulevard is attached as **Exhibit C** to the Mintz Declaration.

21.     At 257 Mother Gaston Boulevard, a building in AEP with 8 apartment units, there are 116 open violations, including 22 Class A violations; 74 Class B violations; 19 Class C violations.  A list of the open violations at 257 Mother Gaston Boulevard is attached as **Exhibit D** to the Mintz Declaration.

22.     At 477 Saratoga Avenue, a/k/a 1352-1354 East New York Avenue, a building with 10 apartment units, there are 22 open violations, including 7 Class A violations; 13 Class B violations; and 2 Class C violations.  A list of the open violations at 477 Saratoga Avenue is attached as **Exhibit E** to the Mintz Declaration.

*Northeast Brooklyn Partnership Buildings*

23.     Northeast Brooklyn Partnership owns and operates five residential buildings.

24.     409 Kosciuszko Street only has 3 units and no reported open violations as of the filing date of this Motion.

25.     At 403 Kosciuszko Street, a building in AEP with 13 apartment units, there are 21 open violations, including 5 Class A violations and 12 Class B violations; and 2 Class C violations. A list of the open violations at 403 Kosciuszko Street is attached as **Exhibit F** to the Mintz Declaration.

11

26.     At 399 Kosciuszko Street, a building in AEP with 12 apartment units, there are 57 open violations, including 14 Class A violations; 29 Class B violations; and 12 Class C violations. A list of the open violations at 399 Kosciuszko Street is attached as **Exhibit G** to the Mintz Declaration.

27.     At 675 Halsey Street, a building with 6 apartment units, there are 32 open violations, including 6 Class A violations; 21 Class B violations; and 5 Class C violations.  A list of the open violations at 675 Halsey Street is attached as **Exhibit H** to the Mintz Declaration.

28.     At 671 Halsey Street, a building with 6 apartment units, there are 20 open violations, including 5 Class A violations; 14 Class B violations; and 1 Class C violation.  A list of the open violations at 671 Halsey Street is attached as **Exhibit I** to the Mintz Declaration.

*Greene Avenue Buildings*

29.     984-988 Greene Avenue Housing Development Fund Corporation owns and operates two residential buildings.

30.     At 984 Greene Avenue, a building with 16 apartment units, there are 56 open violations, including 24 Class A violations; 30 Class B violations; and 2 Class C violations.  A list of the open violations at 984 Greene Avenue is attached as **Exhibit J** to the Mintz Declaration.

31.     At 988 Greene Avenue, a building with 16 apartment units, there are 82 open violations, including 23 Class A violations; 53 Class B violations; and 6 Class C violations.  A list of the open violations at 988 Greene Avenue is attached as **Exhibit K** to the Mintz Declaration.

**Stay Relief Motion/Debtors' Commitment to Complete Repairs by August 14**

32.     The Debtors commenced actions in New York City housing court against a number of the Tenants for non-payment of rent (the "**Non-Pay Actions**").  The Debtors refused to consent to stay relief to permit the Tenants to assert their full panoply of defenses and counterclaims in the Non-Pay Actions.  However, the Debtors did agree to a brief stay of the Non-Pay Actions and in

12

that regard on May 21, 2019, the Debtors and the Tenants entered into the *Stipulation and Order Between Debtors and Tenants Regarding Adjournment of Housing Court Cases* dated May 21, 2019 (the "**Stay Stipulation**") [Dkt. No. 56-1, 81] pursuant to which the Non-Pay Actions were stayed until July 1, 2019.

33.     On June 11, 2019, Tenants filed their *Motion for Relief from Automatic Stay* [Dkt. No. 68] (the "**Stay Relief Motion**") to permit the Tenants to fully defend and assert counterclaims in the Non-Pay Actions, to enforce the consent orders in the aforementioned HP cases in housing court requiring the Debtors to make needed repairs to the Tenants' apartments or face contempt and civil penalties, and to permit them to seek enforcement of laws governing the habitability and conditions of their apartments.  The Debtors filed an *Objection and Response to Tenants' Stay Relief Motion* on June 19, 2019 [Dkt No. 69], and the Tenants filed a *Reply to Debtor's Objection* on June 21, 2019 [Dkt. No. 73].

34.     At the June 26, 2019 hearing, the Tenants and Debtors reached an agreement to resolve the Stay Relief Motion pursuant to which (i) the Tenants would be permitted to assert defenses and counterclaims in the Non-Pay Actions, (ii) the Tenants would work in good faith to provide the Debtors with access to their apartments for purposes of making repairs, and (iii) the Debtors committed to complete repairs and remedy violations to the Debtors' apartments and in the common areas of the buildings prior to August 14, 2019, the next hearing date in these cases. This agreement was announced on the record of the hearing and remains subject to documentation in a formal stipulation, which is being negotiated.  To date, the Debtors have failed to fulfill their commitment (*e.g.*, missing many access dates, failing to commence repairs, making cosmetic repairs but failing to address the sources of the conditions, etc.) and it does not appear that they will adequately rectify the apartment conditions and violations by the August 14 deadline.

### Debtors' Multiple Violations of Stay Stipulation

35.     As noted above, the Debtors and the Tenants entered into the Stay Stipulation on May 21, 2019, pursuant to which the parties agreed to stay the Debtors' Non-Pay Actions against the Tenants until July 1, 2019 and further agreed to adjourn the non-pay actions on consent and to toll the Tenants' time to answer, respond, or take other action with respect to the complaints through July 1, 2019.   In direct and contemptuous violation of the Stay Stipulation, the Debtors (through their landlord-tenant counsel) proceeded to file requests seeking the entry of default judgments against fourteen (14) Tenants.  Default judgments and warrants for eviction were in fact entered against all but one of them.

36.     Fortuitously, counsel for the Tenants became aware of these default judgments before any warrants for eviction were improperly executed.  As a result, the parties entered into a stipulation vacating the default judgment and warrant and discontinuing the non-pay action with respect to each of the fourteen (14) Tenants at issue (collectively, the "**Discontinuation Stipulations**"), which have been submitted to the New York City Housing Court.  Needless to say, it would have been devastating if any of the Tenants were improperly evicted as a consequence of the Debtors' blatantly wrongful actions and this highlights the Debtors' incompetence and gross mismanagement.[7]

### City's Motion for Stay Relief, Dismissal or Appointment of a Trustee

37.     By motion dated June 25, 2019, the City of New York (the "**City**") filed a motion for stay relief to permit foreclosure of Debtors' real property or in the alternative for dismissal of

---

[7]     Based on this conduct, the Tenants filed an objection [Dkt. No. 93] to the Debtors' application to retain Sperber, Denenberg & Kahan, P.C. ("**SDK**") as special landlord-tenant counsel [Dkt. No. 78] because it was that firm that undertook the wrongful actions with the Debtors' assistance.  But, the Debtors have refused to withdraw their application to retain SDK notwithstanding SDK's wrongful actions -- this too reflects the Debtors' incompetence and gross mismanagement.

the case or the appointment of a chapter 11 trustee [Dkt. No. 83] (the "**City Motion**").  In the City

Motion, the City recites the extraordinary high number of violations including Class B and C

violations which are hazardous to health and safety and notes that "[t]his is an egregious number

of violations and is abnormal for housing in general and affordable housing".  As detailed in the

City Motion, the Debtors have been unable to service the mortgage debt and have also fallen

behind on their tax and water payments.  The City Motion is scheduled for hearing on the same

date as this Motion.

## JURISDICTION AND VENUE

38.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The legal predicates for the relief requested

herein are 11 U.S.C. §§ 1104(a) and 1104(c).

## ARGUMENT

39.    Section 1104(a) of the Bankruptcy Code governs the appointment of a chapter 11

trustee and provides in relevant part:

> At any time after the commencement of the case but before confirmation of a plan, on
> request of a party in interest or the United States trustee, and after notice and a hearing, the
> court shall order the appointment of a trustee—
>
> > (1) for cause, including fraud, dishonesty, incompetence, or gross
> > mismanagement of the affairs of the debtor by current management,
> > either before or after the commencement of the case, or similar
> > cause, but not including the number of holders of securities of the
> > debtor or the amount of assets or liabilities of the debtor;
> >
> > (2) if such appointment is in the interests of creditors, any equity
> > security holders, and other interests of the estate, without regard to
> > the number of holders of securities of the debtor or the amount of
> > assets or liabilities of the debtor; or . . .

15

11 U.S.C. § 1104(a). The party seeking appointment of a chapter 11 trustee bears the burden of showing, by clear and convincing evidence, either "cause" under section 1104(a)(1) or the need for a trustee under section 1104(a)(2).  *See In re Ashley River Consulting, LLC*, No. 14-13406, 2015 Bankr. LEXIS 1008, at *28 (Bankr. S.D.N.Y. Mar. 31, 2015); *In re Eurospark Industries, Inc.*, 424 B.R. 621, 627 (Bankr. E.D.N.Y 2010).

40.     Although there is a presumption "rooted primarily in practical considerations" that a debtor should remain in possession, that presumption can be rebutted where the facts of the debtor's bankruptcy proceedings "militate against retaining the debtor as debtor-in-possession." *Taub v. Adams*, No. 10-CV-02600, 2010 WL 8961434, at *5 (E.D.N.Y. 2010); *see In re Ashley River Consulting, LLC*, 2015 Bankr. LEXIS 1008, at *27 (finding presumption "that a debtor should remain in possession absent a showing of need for the appointment of a trustee . . . is not absolute."). The facts of these bankruptcy proceedings demonstrate the need for the appointment of a Chapter 11 Trustee.

   A.     **The Appointment of a Chapter 11 Trustee is Required Under Section 1104(a)(1) of the Bankruptcy Code**

41.     Under Section 1104(a) of the Bankruptcy Code, the Court must appoint a Chapter 11 trustee where "cause" exists for such appointment, or where such appointment is in the interests of the estate's parties in interest.  "Once a court finds that cause exists, the court has no discretion. A trustee must be appointed." *USHA SoHa Terrace, LLC v. RGS Holdings, LLC (In re Futterman)*, 584 B.R. 609, 616 (Bankr. S.D.N.Y. 2018).

42.     Cause exists here because the Debtors are incompetent and have grossly mismanaged their affairs.  Cause also exists due to the Debtors' failure to abide by the laws and regulations of the state and federal governments, including and especially when such failure causes the Debtor to incur fees or penalties for their behavior. *See In re Euro-Am. Lodging Corp.*, 365

B.R. 421, 426-27 (Bankr. S.D.N.Y. 2007) (appointing a chapter 11 trustee under a gross mismanagement theory where the debtor failed to pay state real estate taxes and failed to reinstate its foreign corporation registration pursuant to the Tax Law, and thus incurred interest and penalties).

43.     The Bankruptcy Code requires that the Debtors operate "according to the requirements of the valid laws in the State in which the property is situated." 28 U.S.C. § 959(b); *see, e.g.*, *In re Friarton Estates Corp.*, 65 B.R. 586, 589 (Bankr. S.D.N.Y. 1986) (citing *Cullen v. Bowles*, 148 F.2d 621 (2d Cir. 1945) ("Such rules of law affecting the trustee's or debtor in possession's conduct include the New York City Emergency Rent Control laws."); *see also Saravia v. 1736 18th Street, N.W., Ltd. P'ship*, 844 F.2d 823, 927 (D.C. Cir. 1988) (noting that "general bankruptcy policy of fostering the rehabilitation of debtors" does not "serve to preempt otherwise applicable state laws dealing with public safety and welfare" and finding that debtor's "rejection of leases under section 365(h) has no bearing on the debtor-landlord's obligations under applicable local law.").

44.     In the current case, Debtors have violated multiple New York City and State laws, and continue to incur substantial fines based on their violations. N.Y. Real Property Law § 235-b requires that the premises are "fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety." *See also* NYC Admin. Code § 27-12011. Based on the hundreds of violations listed above, *see* ¶¶ 17-32, Debtors are in violation of the law.[8] Furthermore, the Debtor's filing for bankruptcy does not excuse them from

---

[8]     Acknowledging that work is potentially ongoing and that the conditions of the repairs are fluid, and also to provide the most up-to-date information possible, the Tenants intend to submit supporting declarations and provide additional evidence closer in time to the date of the hearing on this Motion.

correcting the hazardous conditions as required by the applicable laws set forth above that specifically deal with public safety and welfare. These bankruptcy cases are now nearly six months old and the Debtors have been afforded ample opportunity during that time to remedy these conditions, but have failed to do so. As a consequence, the Tenants' health, safety and welfare remain as the Tenants have had to and continue to live in uninhabitable apartments.

45.    The Debtors' incompetence and gross mismanagement is also reflected in the Debtors' actions (through their chosen counsel, SDK) to repeatedly violate the Stay Stipulation and obtain default judgments and executions of warrants against the Tenants. Frankly, the Debtors are lucky and perhaps avoided criminal liability by virtue of counsel for the Tenants fortuitously discovering these default judgments before warrants of eviction were executed -- otherwise, the Tenants could very well have been wrongfully evicted and literally put out on the streets. This conduct in of itself constitutes "cause" to justify appointment of a trustee.

46.    Another example of Debtors' gross mismanagement is that they have failed to comply with their regulatory agreements with the City including by entering into leases with the Tenants that fail to comply with such agreements. The Debtors have also failed to maintain proper rent registration histories with the New York State Division of Housing & Community Renewal, as a result of which many of the Tenants have rent overcharge claims against the Debtors. Furthermore, the Debtors have failed to make payments on their City mortgages and have failed to stay current on tax and water payments.

47.    "Cause" under Section 1104(a)(1) is not limited by the list enumerated in that section. *See In re Ashley River Consulting, LLC*, 2015 Bankr. LEXIS 1008, at **28-29. Rather, courts have wide latitude in determining whether "cause" exists. *Id.*; *see In re Ancona*, No. 14-10532, 2016 Bankr. LEXIS 4114, at *31 (Bankr. S.D.N.Y. Nov. 30, 2016) (finding grounds for

18

finding "cause" to appoint a chapter 11 trustee are not limited to the list specifically set forth in section 1104(a)). Specifically, "where a debtor 'fails to disclose material and relevant information, a chapter 11 trustee is required." *In re Ashley River Consulting, LLC*, 2015 Bankr. LEXIS 1008, at **9-10. Here, Debtors have failed to submit monthly reports of the status and condition of the apartments and their repair efforts, notwithstanding the Debtors' on-the-record commitment to do so.

48.    Furthermore, numerous courts have held that conflicts of interest provide "cause" for the appointment of a trustee. *See, e.g.*, *In re Ashley River Consulting, LLC*, 2015 Bankr. LEXIS 1008, at *28 (finding that "[t]he list of wrongs constituting 'cause' that warrants the appointment of a trustee is not exhaustive; some other [f]actors relevant to the appointment of a trustee under § 1104(a)(1) include: conflicts of interest, including inappropriate relations between corporate parents and the subsidiaries . . ."); *In re Ancona*, 2016 Bankr. LEXIS 4114, **31-32 (same); *see, e.g.*, *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 471 (3d Cir. 1998) (finding cause to appoint trustee because of "unhealthy conflict of interest"); *In re Aardvark, Inc.*, No. 96-858, 1997 WL 129346, at *4 (D. Del. Mar. 4, 1997) (reversing bankruptcy court decision not to appoint trustee where there was "evidence of a potential conflict of interest"); *In re Sharon Steel Corp.*, 86 B.R. 455, 465 (Bankr. W.D. Pa. 1988), *aff'd* 871 F.2d 1217 (3d Cir. 1989) (holding that management's conflict of interest warranted appointment of trustee).

49.    In this case, the Debtors may have claims against their affiliates for negligence and breach of contract, among other things. NEBHDCo, Debtors' property manager and an affiliate of each of the Debtors and under common control with the Debtors, is party to janitorial services contracts and property management agreements with each of the Debtors. Pursuant to those agreements, NEBHDCo is responsible for the maintenance of the buildings and apartments but it

19

has utterly failed to fulfill its obligations in that regard, and is in breach of the agreements.  Yet the Debtors continue to pay hundreds of thousands of dollars every year to NEBHDCo.  In addition to possible claims against its affiliate, the Debtors should be considering whether NEBHDCo is a capable building manager or whether an alternative manager should be engaged.  However, because of the affiliate relationship and common control, the Debtors are not in position to properly evaluate these matters in an appropriately disinterested way.  This is a clear conflict of interest and also supports the appointment of a trustee.

**B.**      **The Appointment of a Chapter 11 Trustee is Required Under Section  Under Section 1104(a)(2) of the Bankruptcy Code**

50.      Second, as an alternative basis, the appointment of a trustee in these Chapter 11 cases is required because it is "in the best interests of creditors, equity security holders, and other interests of the estate" under Section 1104(a)(2). *See In re Futterman*, 584 B.R. at 617 ("even if cause does not exist under section 1104(a)(1), a court may appoint a trustee pursuant to section 1104(a)(2) of the Bankruptcy Code if 'such appointment is in the interests of creditors, any equity security holders, and other interests of the estate.'"); *In re Ashley River Consulting, LLC*, 2015 Bankr. LEXIS 1008, at *35 (same).

51.      Appointment of a Chapter 11 trustee, pursuant to § 1104(a)(2), is not punishment, nor does it imply a finding of fault.  *See In re Ridgemour Meyer Props., LLC.*, 413 B.R. 101 (Bankr. S.D.N.Y 2008) ("Unlike § 1104(a)(1), § 1104(a)(2) does not require a finding of fault; the court may appoint a trustee even if no 'cause' exists."); *see In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990).  Rather, "a bankruptcy court's decision to appoint a trustee [under the § 1104(a)(2]  is to be made on a case-by-case basis, and the facts may weigh against retaining the debtor as debtor-in-possession."  *In re Eljamal*, No. 17-CV-7870, 2018 U.S. Dist. LEXIS 169658, at *17 (S.D.N.Y. Sept. 28, 2018); *see In re Marvel Entertainment Group, Inc.*,

140 F.3d 463, 474 (3d Cir. 1998) (noting that § 1104(a)(2) "envisions a flexible standard," and "gives the district court discretion to appoint a trustee when to do so would serve the parties' and estate's interests.").

52.     Factors courts have considered in deciding whether to appoint a Chapter 11 trustee include whether the "debtor's past and present performance and prospects for the debtor's rehabilitation . . . the confidence — or lack thereof — of the business community and of creditors in present management; and . . . the benefits derived by the appointment of a trustee, balanced against the cost of the appointment." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990); *see also Mfrs. and Traders Tr. Co. v. Morningstar Marketplace, Ltd. (In re Morningstar Marketplace, Ltd.)*, 544 B.R. 297, 304 (Bankr. M.D. Pa. 2016) (considering trustworthiness of the debtor, the reasons for the debtor's behavior, and reliance by and harms to third parties in determining whether to appoint a Chapter 11 trustee).

53.     "Courts have appointed trustees pursuant to Section 1104(a)(2) when there is a high level of acrimony between a debtor's management and its creditors . . . , particularly if that acrimony is hampering the prospects of rehabilitation." *In re Taub*, 427 B.R. 208, 227-28 (Bankr. E.D.N.Y. 2010) (internal quotations omitted). "In fact, acrimony between the creditors and the debtor's management, standing alone, has been found to be a basis to appoint a chapter 11 trustee under § 1104(a)(2) […] when the inherent conflicts extend beyond the healthy conflicts that always exist between debtor and creditor." *Id*. (internal quotations and citations omitted). "A conflict of interest can arise where a debtor has multiple roles that give rise to conflicting duties and obligations." *Id*. (citing *In re SunCruz Casinos, LLC*, 298 B.R. 821, 831 (Bankr. S.D. Fla. 2003) (finding conflict of interest where creditor and debtor-in-possession held landlord-tenant relationship)).

21

54.     In *In re Taub*, the Eastern District of New York (Stong, J.) appointed a Chapter 11 Trustee under similar circumstances to the current case.  There, the debtor-in-possession was the creditors' landlord, and was also engaged in litigation as both plaintiff and defendant in state court cases involving the creditor-tenants.  427 B.R. at 229.  In appointing a trustee, the Court found that "a trustee can manage the estate's property without the constraints that result from the contentious litigation pending in this Court and elsewhere.  A trustee can fulfill the Debtor's fiduciary obligation to the estate and its creditors without any prospect of favoritism or animus.  That is, a trustee will not be affected by conflicts of interest and the long litigation history among many of the parties, and can manage the assets, including the Titled Properties, evaluate the claims, and otherwise perform the duties of a debtor-in-possession with the objective of preserving the value of the estate." *Id*. at 230.

55.     In the current case, a trustee is necessary for near-identical reasons.  The Tenants are also creditors, and the Debtors are fiduciarily obligated to protect their interests, which cannot be done effectively when Debtors have active litigation (Non-Pay Actions) against them.  Moreover, Tenants have lost any and all confidence in the Debtors ability to manage their properties due to the serious and hazardous building conditions described herein, as well as Debtors' continued inability to remedy those conditions, despite countless opportunities to do so.

56.     An independent fiduciary would help restore the customers' confidence and also help facilitate the restoration of the buildings and apartments to habitable conditions.

[*conclusion and signature page to follow*]

## NOTICE

57.     The Tenants have provided notice of this Motion to: (i) the Office of the United States Trustee for the Eastern District of New York; (ii) counsel to the Debtors; and (iii) the list of creditors filed by the Debtors in these Chapter 11 cases.  The Tenants submit that no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Tenants respectfully request that the Court enter an order appointing a Chapter 11 trustee and order such other relief as the Court deems just and proper.


Dated: New York, New York
      July 23, 2019

By:    *s/* Benjamin Mintz
      Benjamin Mintz
      Arnold & Porter Kaye Scholer LLP
      250 West 55th Street
      New York, New York 10019
      Telephone: (212) 836-8505
      Facsimile: (212) 836-6550


      Samar Katnani
      Jane Landry-Reyes
      Brooklyn Legal Services NYC
      105 Court St. 4th floor
      Brooklyn, NY 11201
      Telephone: (718) 237-5500

      *Attorneys for Certain Tenants*
