UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                    Chapter 11

PARK MONROE HOUSING DEVELOPMENT                           Case No. 1-19-40820 (CEC)
    FUND CORPORATION, *et al.,*                       (Jointly Administered)

        Debtors.

------------------------------------------------------------x


# DISCLOSURE STATEMENT
## IN SUPPORT OF CHAPTER 11 PLAN OF
## <u>NORTHEAST BROOKLYN PARTNERSHIP</u>


Dated:  August 13, 2019

ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Allen G. Kadish
Harrison H.D. Breakstone
Email: akadish@archerlaw.com
hbreakstone@archerlaw.com


*Counsel for Northeast Brooklyn Partnership,*
*Debtor and Debtor-in-Possession*

## <u>DISCLAIMER PURSUANT TO LBR 3017-1(b)</u>
**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

**I.**

**<u>INTRODUCTION</u>**

Northeast Brooklyn Partnership, a New York limited partnership, debtor and debtor-in-possession commenced this chapter 11 Case on February 11, 2019, by filing a voluntary chapter 11 petition under the Bankruptcy Code in the Bankruptcy Court.  Chapter 11 of the Bankruptcy Code allows the debtor, and under some circumstances, creditors and other parties in interest, to propose a chapter 11 plan. The Plan provides for the Debtor to sell its key asset, the Property, and pay creditors, from the proceeds of sale, the "Implementation Funds."  The Sale is contemplated to achieve proceeds sufficient to pay all Allowed Administrative, Priority, Secured and Unsecured Claims in full, subject to certain limitations described herein.  The Debtor is the party proposing the Plan.  The Plan is attached hereto.

In the Debtor's view, the treatment of Claims under the Plan provides a greater and more certain recovery for Creditors than that which is likely to be achieved under other reorganization or liquidation alternatives.

The document you are reading is the *Disclosure Statement in Support of Chapter 11 Plan of Northeast Brooklyn Partnership* (this "Disclosure Statement").  Unless otherwise defined in this Disclosure Statement, capitalized terms used herein will have the meanings ascribed to them in the Plan.

1.1      **Purpose of this Document.**  This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether to confirm the Plan.

READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:

(1)   WHO CAN VOTE OR OBJECT;

(2)   THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what you will receive on account of your Claim if the Plan is confirmed);

(3)   THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;

(4)   WHAT THE BANKRUPTCY COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN;

(5)   THE FEASIBILITY OF THE PLAN; and

(6)    THE EFFECT OF CONFIRMATION.

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how the Plan may affect you and what is the best course of action for you.

Be sure to read the Plan as well as this Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Section 1125 of the Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The term "adequate information" is defined in section 1125(a) as "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgment about accepting or rejecting the Plan.

This Disclosure Statement is provided to each Creditor holding a Claim that has been scheduled by the Debtor as an undisputed, non-contingent or liquidated Claim, or who has filed a proof of claim against the Debtor.

1.2      **Confirmation Procedures.**

THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS IN THIS CASE.

(a)       No Voting.

The Plan provides for payment of all Allowed Administrative, Priority, Secured and Unsecured Claims in full, subject to certain limitations described herein. Therefore, no Creditors are invited to vote on the Plan.

(b)       Who May Vote to Accept/Reject the Plan.

In general, a creditor has a right to vote for or against a plan if that creditor has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

(c)       What is an Allowed Claim.

As noted above, an impaired creditor must first have an allowed claim to have the right to vote. Generally, any proof of claim or interest is deemed allowed, unless a party in interest files an objection to the claim. When an objection to a claim is filed, the creditor holding the claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes.

A creditor may have an allowed claim even if a proof of claim is not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.

THE GENERAL BAR DATE (THE COURT ORDERED DEADLINE) FOR FILING A PROOF OF CLAIM IN THIS CASE IS JULY 1, 2019.

      (d)      What is an Impaired Claim.

As noted above, an allowed claim only has the right to vote if it is in a class that is impaired under the plan (unless otherwise provided). A class is impaired if the plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class is impaired if the plan fails to pay the members of that class 100% of its claim plus interest.

In this case, the Debtor believes that no Class is Impaired. Parties who dispute the Debtor's characterization of their Claim as being Unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized the Class.

      (e)      Who is Not Eligible to Vote.

The following four types of claims are not entitled to vote: (1) claims that have been disallowed or have been objected to prior to voting on the plan (unless otherwise allowed by the Bankruptcy Court for voting purposes); (2) claims in an unimpaired class; (3) claims entitled to priority pursuant to sections 507(a)(1), (a)(2), and (a)(8)) of the Bankruptcy Code; and (4) claims in classes that do not receive or retain any value under the plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the plan. Claims entitled to priority pursuant to sections 507(a)(1), (a)(2), and (a)(8) of the Bankruptcy Code are not entitled to vote because such claims are not placed in classes and are required to receive certain treatment specified by the Bankruptcy Code. Claims in classes that do not receive or retain any value under the plan do not vote because such classes are deemed to have rejected the plan and are entitled to certain consideration by the Bankruptcy Court. *The Plan proposes that all Creditors, with certain limitations described herein, are to be paid in full and therefore hold Unimpaired Claims.* Therefore, no Creditors are entitled to vote on the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

      (f)      Time and Place of the Confirmation Hearing.

The hearing at which the Bankruptcy Court will determine whether to confirm the Plan will take place before the Honorable Carla E. Craig, United States Bankruptcy Judge, on _____, _____ __, 2019 at __:__ _.m., in Courtroom 3529, at the Conrad B. Duberstein U.S. Courthouse, 271-C Cadman Plaza East, Brooklyn, New York 11201-1800.

(g)      Who May Object to Confirmation of the Plan.

Any Creditor or other party in interest may object to the Confirmation of the Plan.

(h)      Deadline for Objecting to the Confirmation of the Plan.

Objections to the Confirmation of the Plan must be filed with the Bankruptcy Court on or before _____, _____ __, 2019, and served upon Debtor's counsel at the following address:

ARCHER & GREINER, P.C.
*Counsel for Northeast Brooklyn Partnership*
Attn:  Allen G. Kadish
Harrison H.D. Breakstone
630 Third Avenue
New York, New York 10017

Any interested party desiring further information about the Plan should contact Debtor's counsel.

1.3    **Disclaimer.**  The financial data relied upon in formulating the Plan is based on the Debtor's books and records and certain evaluations and projections prepared therefrom.  The Debtor's managers provided the information contained in this Disclosure Statement. The Debtor represents that everything stated in the Disclosure Statement is true to the Debtor's best information, knowledge and belief.  While every effort has been made to ensure the accuracy of all information, the information presented herein is unaudited and has not been examined, reviewed or compiled by independent public accountants.  Neither the Debtor, nor the Debtor's Professionals, make any representation or warranty regarding the financial or historical information contained herein.

THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.

**II.**

**<u>BACKGROUND</u>**

2.1    **Description and History of the Debtor's Business.**

The Debtor is a for-profit limited liability partnership organized under the laws of New York on or about August 29, 1991.  NBP owns and operates five residential buildings and an additional lot, totaling 40 units that are over 90% leased:

| Address | Units | Neighborhood |
|---------|-------|--------------|
| 409 Kosciuszko Street<br>Brooklyn, New York 11221 | 3 | Bedford-Stuyvesant |
| 403 Kosciuszko Street<br>Brooklyn, New York 11221 | 13 | Bedford-Stuyvesant |
| 399 Kosciuszko Street<br>Brooklyn, New York 11221 | 12 | Bedford-Stuyvesant |
| 397 Kosciuszko Street<br>Brooklyn, New York 11221 | Lot | Bedford-Stuyvesant |
| 675 Halsey Street, Brooklyn<br>New York 11233 | 6 | Stuyvesant Heights |
| 671 Halsey Street<br>Brooklyn, New York 11233 | 6 | Stuyvesant Heights |

The Debtor's stated purpose upon its organization was, and remains, to acquire the land and improvements and rehabilitate or construct the Property, to finance such acquisition and rehabilitation or construction through loans, and to operate, manage, lease, and otherwise deal with the Property as a real estate development consisting of, or including in significant part, low-income rental housing. The purposes of the partnership also include provision of decent, safe, and sanitary housing affordable to low-income households and qualifying for low-income housing tax benefits.

The Debtor is a domestic limited partnership with one general partner and one limited partner. Cheryl's Villa Housing Corporation ("Cheryl's Villa") is the general partner of the Debtor. Cheryl's Villa is a for-profit, New York corporation incorporated on February 15, 1991 with a corporate purpose, among others, of serving as the general partner of a limited partnership engaged in the development and operation of low-income housing accommodations under the federal low-income housing tax credit program. North Hill 1 LLC ("North Hill") is the limited partner of the Debtor. North Hill is a for-profit, New York limited liability corporation incorporated on March 7, 2017. NEB is the sole shareholder of Cheryl's Villa and North Hill. NEB was incorporated in January 1985 as a section 501(c)(3) not-for-profit organization with a mission to provide affordable rental housing to low-income residents of Central Brooklyn, with an initial focus on advocacy through block associations and merchant and tenant organizing.

Given that NEB is the sole member of Cheryl's Villa and North Hill, the corporate purpose of the Debtor, and its corporate structure, including the operations of the Debtor, are executed principally by NEB. NEB executes administrative, financial and operational support for the Debtor.

The Debtor's Property is owned subject to certain deed restrictions and an *Amended and Restated Regulatory Agreement*, dated July 31, 2012, such that the use and disposition of the Property is restricted in the interest of the preservation of affordable housing.

The Debtor has operated as a debtor-in-possession since the Petition Date. The

Debtor's operations have included the collection of rent from its tenants and pursuing collections from delinquent tenants.

Prior to, and throughout the Debtor's Case, the Debtor has maintained a Property Management Agreement and a Janitorial Agreement with NEB, under which NEB operates the Debtor's buildings and provides maintenance services.  Under these agreements NEB has consistently attended to all repairs in the Debtor's buildings.  These repairs include, but are not limited to, violations pursuant to the City's Alternative Enforcement Program.

Since the Petition Date the Debtor requested inspection by the City for clearance under the City's Alternative Enforcement Program and entered into a stipulation with certain tenants for a stay of their respective non-payment proceedings [Docket No. 56].

### 2.2    **The Debtor's Secured Creditors.**

(a)    **City Secured Claim.** The City is the Debtor's largest secured creditor. The City holds the City Mortgages encumbering the Property in the principal amount of $2,848,843.00.

(b)    **Remaining Secured Claims (besides City Secured Claim)**.  The following creditors have secured claims as approximated and set forth below and remain subject to final liquidation:

> i.    New York City Department of Finance – Holds a pre-petition secured claim in the amount of $93,596.97 (as of February 11, 2019).
>
> ii.    New York City Water Board – Holds a pre-petition and post-petition secured claim for unpaid water charges in the amount of $88,819.14 (as of February 11, 2019).
>
> iii.    New York City Office of Administrative Trials and Hearings – Holds a pre-petition secured claim in the amount of $400.00 (as of February 11, 2019).

### 2.3    **Events Leading to Chapter 11.**

At some point the Debtor failed to make monthly debt service after attempts to sell the Property failed due to lack of cooperation by the City.  On October 31, 2017, the City commenced the Foreclosure Action in the Supreme Court of the State of New York, County of Kings, against the Debtor and several other parties titled *City of New York v. Northeast Brooklyn Partnership, New York State Department of Taxation and Finance, New York City Environmental Control Board; City of New York Department of Finance; Betty J. Cox d/b/a JS Secretarial Services; and "John Does" #'s 1-100* (No. 521090/2017).  The City commenced the commercial foreclosure action alleging that the Debtor failed to comply with the terms and provisions of the mortgages by failing to pay the monthly debt service due and owing on July 1, 2017, and thereafter.

On December 13, 2018, the State Court entered an Order of Receivership [NYSCEF Doc. No. 95]. Prior to the qualification of the receiver, the Debtor filed for relief under Chapter 11 to restructure the Debtor's outstanding debt obligations such that repayment would be possible to all creditors rather than a receiver take control for the sole benefit of the City and to the detriment of all the Debtor's other creditors and its corporate purpose. The events and circumstances precipitating the Debtor's filing are set forth more fully in the *Declaration of Jeffrey E. Dunston Pursuant to Local Bankruptcy Rule 1007-4* filed February 15, 2019 [Docket No. 8].

2.4     **Confirmation of the Plan.**

Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court will schedule a Confirmation Hearing as set forth above. The Bankruptcy Court will set deadlines for objections, if any, to Confirmation of the Plan.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied, and, if it the Bankruptcy Court determines that they have been, the Bankruptcy Court will enter an order confirming the Plan. The Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing. The Confirmation Order and the occurrence of the Effective Date would make the Plan binding upon the Debtor, all Creditors and other parties regardless of whether they accept the Plan.

## ARTICLE III

## THE PLAN

3.1     **Classification and Treatment of Claims.**

The table below provides a summary of the classification and proposed treatment of Claims under the Plan and a listing of unclassified Claims. The figures set forth in the table below as to Claims are based on the Schedules, filed Claims, or other estimates made by the Debtor. Estimates are as of the projected Effective Date, August 31, 2018.

| CLASS AND ESTIMATED AMOUNT | TYPE OF CLAIM | SUMMARY OF TREATMENT |
|---|---|---|
| Unclassified<br><br>(Estimate: $0) | Administrative Claims (excluding Claims for Professional Fees, including statutory United States Trustee fees). | **Non-voting.** Each Allowed Administrative Claim except to the extent any entity entitled to payment has received payment on account of such Claim prior to the Effective Date or agrees to less favorable treatment, each Holder of an Allowed Administrative Claim will receive Cash from the Debtor in an amount equal to such Allowed Claim by the later of either (i) the Effective Date or as |

| | | soon thereafter as is reasonably practicable, (ii) the date that is 14 days after the Administrative Claim is Allowed; or (iii) as may be otherwise mutually agreed in writing between the Debtor and the holder of such Allowed Administrative Claim; provided, however, that any Allowed Administrative Claim incurred by the Debtor in the ordinary course of its business will be paid in full or performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto. Since by law holders of Allowed Administrative Claims must be paid in full, these claims are not classified and holders of Allowed Administrative Claims do not vote. |
|---|---|---|
| Unclassified<br><br>(Estimate: $250,000) | Administrative Claims for Professional Fees and Reimbursement of Expenses | **Non-voting.** All Professionals seeking payment of Professional Fees incurred through and including the Effective Date will file their respective final applications on or before the date that is 45 days after the Effective Date. Any such application timely filed will be deemed to be an Allowed Administrative Expense Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application. Since by law, holders of Administrative Claims for Professional Compensation and Reimbursement of Expenses must be paid in full to the extent Allowed, these claims are not classified and holders of Administrative Claims do not vote. |
| Unclassified<br><br>(Estimate: $0) | Administrative Tax Claims | **Non-voting.** All Administrative Tax Claims held by Governmental Units will be paid, in Cash, in full either (i) on or prior to the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such Governmental Unit as of the Effective Date. These claims are not classified and holders of Administrative Tax Claims do not vote. |
| Unclassified<br><br>(Estimate: $0) | Priority Tax Claims | **Non-voting.** In full satisfaction, release and discharge of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Debtor and such Governmental Units, each Priority Tax Claim will be paid in full as of the Effective Date. These claims are not classified and holders of Priority Tax Claims do not vote. |
| Class 1 | Priority Claims (other than Priority | **Unimpaired; Non-Voting.** All Priority Claims will be paid in full on the Effective Date, or as soon |

| (Estimate: $0) | Tax Claims and Administrative Claims) | as practicable after such claims become Allowed Claims. These claims are unimpaired and do not vote. |
|---|---|---|
| Class 2<br><br>(Estimate: $3,250,000) | City Secured Claim | **Unimpaired; Non-Voting.** The City Secured Claim will be either (i) paid in full on the Effective Date, or as soon as practicable after such claim becomes an Allowed Claim; or (ii) as may be otherwise mutually agreed in writing between the Debtor and the holder of such City Secured Claim. Such claim is unimpaired and does not vote. |
| Class 3<br><br>(Estimate: $185,000) | Remaining Secured Claims besides City Secured Claim | **Unimpaired; Non-Voting.** The Remaining Secured Claims will be Allowed Claims to the extent it is not disputed and either (i) paid in full on the Effective Date, or as soon as practicable after each claim becomes an Allowed Claim; or (ii) as may be otherwise mutually agreed in writing between the Debtor and the holders of each Remaining Secured Claim. Such claim is unimpaired and does not vote. |
| Class 4<br><br>(Estimate: $250,000) | General Unsecured Claims | **Unimpaired; Non-Voting.** The General Unsecured Claims will be either (i) paid in full on the Effective Date; or as soon as practicable after such claim becomes an Allowed Claim (including interest at the federal judgment rate as at the Petition Date pursuant to 28 U.S.C. §1961, from the Petition Date through the Effective Date); or (ii) as may be otherwise mutually agreed in writing between the Debtor and the holders of such remaining General Unsecured Claims. Such claims are unimpaired and do not vote. |

3.2      **Certain Other Provisions Related to Unclassified Claims.**

(a)      **Administrative Bar Date.** Except as otherwise provided in the Plan, requests for payment of Allowed Administrative Claims must be filed no later than the Administrative Claim Bar Date as set forth in the Confirmation Order. Holders of Allowed Administrative Claims that do not file requests for the payment on or before the Administrative Claim Bar Date, will be forever barred from asserting such Allowed Administrative Expense Claims against the Debtor or its property.

(b)      **Claims for Professional Fees and Reimbursement.** All Professionals seeking payment of Professional Fees incurred through and including the Effective Date will file their respective final applications on or before the date that is 30 days after the Confirmation Date. Any such application timely filed will be deemed to be an Allowed Administrative Expense Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application.

Objections to any Professional's application for compensation or reimbursement must be timely filed and served upon such Professional, and upon the Debtor, in accordance with the Bankruptcy Rules or any order entered by the Bankruptcy Court. Upon entry of a Final Order approving an application, the fees will be paid within seven days thereafter or otherwise in accordance with the Plan or as agreed to by the Professional and the Debtor.

Funds will be reserved on the Effective Date for anticipated Professional Fees that may come to be due and payable pursuant to orders entered after the Confirmation Date.

As of the date of this Disclosure Statement, the estimated amounts of Professional Fees are as follows, as of October 31, 2019:

Archer & Greiner, P.C. - Counsel for the Debtor
$200,000.00 (estimate)

Abrams Fensterman LLP – Special Real Estate Counsel for the Debtor
$15,000.00 (estimate)

The funds to pay the approved amounts of such fees will be provided from the Implementation Funds.

(c)     **Statutory Fees.**  On the Effective Date, the Debtors will make all payments required to be paid to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6). All fees payable pursuant to 28 U.S.C. § 1930(a)(6) after the Effective Date will be paid by the Reorganized Debtor on a quarterly basis until the Case is closed, converted, or dismissed.

3.3     **Executory Contracts and Unexpired Leases.**

(a)     **Generally.**  To the extent not (i) assumed in the Case prior to the Confirmation Date, (ii) rejected in the Case prior to the Confirmation Date, or (iii) specifically rejected pursuant to the Plan, the Confirmation Order will constitute an Order authorizing the assumption of all Executory Contracts and Unexpired Leases not previously assumed or rejected.

i.     The provisions (if any) of each Executory Contract or Unexpired Lease to be assumed under the Plan which is or may be in default will be satisfied solely by such cure amounts as may be found by the Bankruptcy Court. In the event of a dispute regarding (i) the nature or the amount of any cure, (ii) the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the cure will occur as soon as practicable following agreement of the parties or the entry of a Final Order resolving the dispute and approving the assumption of the Executory Contract or Unexpired Lease. The Debtor estimates no cure payments will be necessary with respect to any Executory Contract or Unexpired Lease.

ii.     Notwithstanding anything otherwise to the contrary, (i) nothing contained herein will constitute or be deemed to constitute a waiver or relinquishment of any right of the Debtor to object to any cure payments asserted and it will retain, reserve and be entitled to assert any objection or legal or equitable defense to any cure, and (ii) if a dispute relating to a cure remains unresolved or is resolved in a manner that the Debtor determines, in its sole discretion, does not protect its interests, the Debtor will be entitled to reject the Executory Contract or Unexpired Lease to which such cure dispute relates.

iii.     Except to the extent that different treatment has been agreed to by the non-Debtor party or parties to any Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan, the Debtor will, consistent with the requirements of section 365 of the Bankruptcy Code, following the Effective Date, file and serve on parties to executory contracts or unexpired leases to be assumed and other parties in interest (the "Cure Notice") listing the proposed cure (including amounts of compensation for actual pecuniary loss) to be paid in connection with the assumption of all Executory Contracts or Unexpired Leases to be assumed. The parties to such Executory Contracts or Unexpired Leases to be assumed will have ten (10) days following service of the Cure Notice to object in writing to the cure proposed by the Debtor, and to propose an alternative cure.  In the event that no objection is timely filed, the applicable party will be deemed to have consented to the cure proposed (including amounts of compensation for actual pecuniary loss) by the Debtor and will be forever enjoined and barred from seeking any additional amount on account of the Debtor's cure obligations under section 365 of the Bankruptcy Code from the Debtor, its Estate, the Debtor or any assignee of the contract or lease.  If an objection is timely filed with respect to an Executory Contract or Unexpired Lease, the Bankruptcy Court will hold a hearing to determine the amount of any disputed cure amount not settled by the parties.  Notwithstanding anything otherwise to the contrary, at all times through the date that is five Business Days after the Bankruptcy Court enters an order resolving and fixing the amount of a dispute cure amount, the Debtor will be authorized to withdraw its motion to assume and reject such Executory Contract or Unexpired Lease by notice to the non-Debtor party to such Executory Contract or Unexpired Lease.  Any cure payment will be paid out of the proceeds of the Sale and to the extent such remain available.

(b)     **Rejection Claims.**  Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor will be treated as General Unsecured Claims.

(c)     **Bar to Rejection Claims.**  A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease will not be timely unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor within 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim will be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Effective Date.  Any such Claim not timely filed and served will be forever barred from assertion and may not be enforced against the Debtor, its successors or properties.

## ARTICLE IV

## SIGNIFICANT EVENTS IN THE CASE

4.1      **Professional Retentions.**

On April 15, 2019, the Court entered an order approving the retention of Archer & Greiner, P.C. as counsel to represent the Debtor in this Case pursuant to section 327(a) of the Bankruptcy Code effective as of February 11, 2019 [Docket No. 32].

4.2      **Motions.**

On March 12, 2019, the Debtor filed a motion for an order to authorize the use of cash collateral. [Docket No. 22].  The Debtor has used cash collateral on consent of the City.

On March 12, 2019, the Debtor filed a motion for an order granting authority to continue utility services and to provide an adequate assurance payment to the Debtor's utility providers [Docket No. 23].  The Court granted the motion at a hearing held on May 1, 2019.

On March 12, 2019, the Debtor filed a motion for an order granting authority to maintain and enter into an insurance premium financing agreement [Docket No. 23].  The Court granted the motion at a hearing held on May 1, 2019.

4.3      **Monthly Operating Reports.**

Monthly operating reports have been filed on a monthly basis and are publicly available.

4.4      **Office of the United States Trustee Fees.**

Statutory fees have been paid on a quarterly basis to the office of the United States Trustee.

4.5      **Claims Bar Date.**

On May 2, 2019, the Bankruptcy Court entered an order setting a General Bar Date of July 1, 2019 at 5:00 p.m., for persons and entities, and August 12, 2019 at 5:00 p.m., for Governmental Units, thereby setting the deadlines by which the Debtor's Creditors must file proofs of claim for alleged liabilities not paid and/or damages incurred arising from or related to periods prior to the Petition Date [Docket No. 51].

## ARTICLE V

## IMPLEMENTATION OF THE PLAN

5.1      **Means of Implementation**.

(a)      **Sale Proceeds.**  The Debtor and the Purchaser will close on the Sale of the Property on the terms set forth and according to the Sale Contract.  **The Sale proceeds are the source of the Implementation Funds and therefore, all distributions depend upon the closing and funding of the Sale**.  The proposed purchaser is 27 BED STUY LLC, a special purpose entity organized by ELH Mgmt. LLC, as set forth in the Sale Contract, whose principal asserts that they are sophisticated real estate investors and own multiple properties throughout New York City and elsewhere.  The principal asserts that they have the financial resources to consummate the transaction once the necessary Court approvals are obtained.  A deposit will be provided as liquidated damages for failure of the Purchaser to close, as set forth in the Sale Contract.

In summary, the terms of the private Sale are as follows.  The Sale Contract provides for the Sale of the Property on an "as is" "where is" basis.  The Sale Contract is for all of Debtor's right, title and interest in and to the Property, together with all related fixtures, improvements and development rights, and subject to all deed restrictions, zoning and other potential restrictions including, but not limited to, the current regulatory agreement with the City.  The Purchaser will become responsible for violations and repairs on the Effective Date. The Sale Contract also includes the Debtor's assumption and assignment of all residential leases.  The Sale Contract does not include the Debtor's other property including books and records, cash, deposits with third parties, intellectual property, goodwill, tax attributes, claims and causes of action.  Except as provided herein, and in the Sale Contract, the Sale shall be free and clear of all liens, claims, interests, taxes and non-permitted encumbrances pursuant to sections 363(b) and (f), 1123(a)(5)(D) and 1129 of the Bankruptcy Code.  The Purchase Price is as set forth in the Sale Contract. .

The Debtor and Purchaser will bear their respective closing costs and expenses consistent with customary practices. The Debtor will pay all brokerage fees from the Sale proceeds upon Court approval as appropriate.  The Purchaser has represented that the sole broker who introduced the Purchaser to the property and worked with the Purchaser on this Sale was CPEX Real Estate and no other broker.  To the extent any closing costs or obligations are not capable of being paid at closing, such costs will be escrowed or retained upon the agreement of the parties or otherwise as the Court may direct, to be paid promptly as allowed or fixed.

(b)      **Rent Proceeds and Cash on Hand.**  Rent proceeds and Cash on hand are property of the Debtor and may also be used as Implementation Funds to fund and implement the Plan as available.

(c)      **Sources and Uses.**  An estimate of the sources and uses of the

Implementation Funds is attached hereto as Exhibit "5.1(c)."

5.2      **Preservation of Rights of Action**. Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor will retain, and in accordance with its determination of the best interest of the Estate, may enforce any claims, rights and causes of action (i) arising under sections 510 and 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor or the Estate as of the Petition Date, and arising under any provision of state or federal law, or any theory of statutory or common law or equity, including, but not limited to, any cause of action asserted, or which may hereafter be asserted. Any recovery received by the Debtor through the prosecution, settlement or collection of any such claim, right or cause of action, will be retained by the Debtor following the satisfaction of all other Allowed Claims under the terms of the Plan. A *non-exclusive* schedule of specific rights of action preserved is attached hereto as Exhibit "5.2."

5.3      **Stamp Tax.** Under the Plan, pursuant to the fullest application of section 1146(c) of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, will not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment including without limitation New York City Real Property Transfer Tax and New York State Documentary Tax.

5.4      **Modification and Revocation of the Plan**. The Plan may be altered, amended or modified by the Debtor at any time before the substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Section 1127 of the Bankruptcy Code authorizes the proponent of a Chapter 11 plan to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements of sections 1122 and 1123 of the Bankruptcy Code with respect to the classification of claims and the contents of a plan. Prior to confirmation, if a debtor files modifications to a plan, pursuant to section 1127(a) of the Bankruptcy Code "the plan as modified becomes the plan." No order of the court is required to modify the plan under the terms of section 1127(a) of the Bankruptcy Code; however, the proponent of a modification to a plan must comply with section 1125 of the Bankruptcy Code with respect to the plan as modified. In other words, if a modification materially alters the treatment of any Creditor who has accepted the plan, the debtor will be required to make additional disclosures to those Creditors whose treatment has been materially and adversely altered and give such creditors an opportunity to change their votes.

The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Debtor revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan will be null and void, and nothing contained in the Plan will constitute a waiver or release of any Claims by or against, or any interest in, the Debtor; or prejudice in any manner the rights of the Debtor.

5.5    **Retention of Jurisdiction.**

The Plan contains detailed provisions providing for the retention of broad jurisdiction by the Bankruptcy Court over the Plan and this Case for the purposes of, *inter alia*, determining all disputes relating to Claims, resolving all matters presented by or arising under the interpretation, implementation or enforcement of the Plan and to determine all other matters pending on the Effective Date.

**ARTICLE VI**

**ACCEPTANCE AND CONFIRMATION**

6.1    **Requirements for Confirmation.**

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court is expected to enter an order confirming the Plan.  These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interest" of all Creditors, (vi) the Plan is feasible and (vii) the Plan has been accepted by the requisite number and amount of Creditors in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.**  The so-called "best interest" test requires that each impaired Creditor either (a) accepts the Plan, or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such Entity would receive or if the Debtor's property were to be liquidated under chapter 7 of the Bankruptcy Code.

Under the Plan, all Allowed Unsecured Creditors will receive Cash equal to 100% of their Allowed Claims. A 100% return to Creditors on account of their Allowed Claims would not be assured in a liquidation such as the foreclosure described in section 2.3 above.

To determine what the holders in each Impaired Class of Claims would receive if the Debtor were liquidated (under chapter 7 or otherwise), the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets in a

chapter 7 liquidation case.  The amount that would be available for satisfaction of Allowed Claims against the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the Cash held by the Debtor at the commencement of the chapter 7 case.  Such amount would be reduced by the amount of any Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the chapter 7 case.

The costs of liquidation under chapter 7 or otherwise would become Administrative Claims with the highest priority against the proceeds of liquidation after payment of Allowed Secured Claims.  Such costs would include the fees payable to a chapter 7 trustee or other liquidation agent, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other Professionals that such trustee may engage to assist in the liquidation.  In addition, liquidation costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in chapter 11.  After satisfying Administrative Claims arising in the course of the liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.  Given the foregoing a chapter 7 trustee might consider abandoning the assets to the secured creditor resulting in a foreclosure scenario and no return on Unsecured Claims.

After consideration of the effects that a liquidation would have on the proceeds available for distribution including (i) the increased costs and expenses of a liquidation arising from fees payable to the trustee (or liquidating agent), (ii) the erosion in value of the Debtor's assets in the context of the expeditious liquidation and the "forced sale" atmosphere that would prevail, and (iii) the potential increases in Claims which would be satisfied on a priority basis or on a parity with the Claims of General Unsecured Creditors, the Debtor firmly believes that if its property were to be liquidated there would be no assurance of recovery or the timing thereof to holders of Unsecured Claims because any recovery would be dependent upon the uncertain outcome of a forced sale of the Property.  Any such sale would likely return value only on the City Secured Claim while prejudicing all other secured and unsecured Creditors.

      (a)      **Liquidation Analysis.**

As discussed in the foregoing section under the "Best Interest Test," the Plan provides for the payment in full of all Allowed Secured, Administrative, Priority and Unsecured Claims but there can be no such assurance if the Property were to be liquidated in a liquidation proceeding.

      (b)      **Feasibility.**

For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor other than as contemplated by the Plan.  The Debtor

believes that the Plan is feasible and not reasonably likely to be followed by resort to further reorganization or liquidation under the supervision of the Bankruptcy Court.  As discussed above, the Debtor has, with the real estate advisory services of CPEX Real Estate, located the Purchaser.  The Debtor and the Purchaser have agreed upon a Purchase Price that will provide the necessary Implementation Funds.  The Purchase Price is set forth in the Sale Contract, and is an amount expected to be sufficient to support a 100-cent Plan.  The contemplated transaction is for an "as is" "where is" sale, subject to all current regulatory agreements with the City, but otherwise free and clear of all liens, claims and encumbrances, with no financing or any other contingencies available to the Purchaser.

Upon the signing of the Contract of Sale by both parties, the deposit, as set forth in the Sale Contract, will be deposited by the Purchaser via wire or official bank check into the Debtor's special real estate counsel's escrow account ("Earnest Money Deposit").  The Earnest Money Deposit is to stand as liquidated damages in the event of a failure to close upon or after a reasonable extension of a closing date.  Any extension of the closing date, not to exceed one 30 day extension, will be subject to and conditioned upon the Purchaser bearing accruing interest, real estate taxes and other costs related to the extension period.

Upon the Sale and satisfaction of the City Secured Claim, the City will dismiss the Foreclosure Action with prejudice, upon appropriate notice to the Debtor.

(c)    **Confirmation with the Acceptance of Each Impaired Class.**

A plan may be confirmed if each impaired class of claims accepts the plan.  Classes of claims which are not impaired are deemed to have accepted the plan.  A class is impaired if the legal, equitable or contractual rights attaching to the claims of that class are modified other than by curing defaults and reinstating maturities or by payment in full in cash.

Holders of claims impaired by a plan are entitled to vote by submitting ballots accepting or rejecting the plan.  Holders of claims not impaired by a plan are deemed to accept the plan, and may not vote to accept or reject the plan.  Holders of claims that would neither receive nor retain any property under a plan would be deemed to reject the plan.

The Bankruptcy Code defines acceptance of a plan by a Class of Claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of Claims of that class.  Only those Claims, the holders of which actually vote to accept or reject the plan, are counted for the purpose of determining whether the requisite number and amount of acceptances have been received.

With respect to Unsecured Claims, the absolute priority rule allows the confirmation of a plan over the rejection of a class of unsecured claims if the holder of any claim that is junior to the claims of such class will not receive or retain any distribution under the plan on account of such junior claim or interest any property.

Given the payment in full in each Class, no votes are necessary.

    (d)    **Confirmation Without the Acceptance of Each Impaired Class.**

In the event that any impaired class of claims does not accept a plan, the Bankruptcy Court may nevertheless confirm the plan at the debtor's request if (i) all other requirements of section 1129(a) of the Bankruptcy Code are satisfied, (ii) at least one impaired class of claims votes to accept the Plan without regard to any vote cast on account of a claim held by "insiders" (as defined in the Bankruptcy Code) and (iii) as to each impaired class which has not accepted the plan, the Bankruptcy Court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting class. The debtor requests that the court confirm the plan over the rejection of any non-accepting class in the event all other elements of section 1129(a) of the Bankruptcy Code are satisfied; there are no Classes solicited to vote on this Plan.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive for its claims. The Debtor believes that under the Plan the class of Impaired Claims is treated in a manner that is consistent with the treatment of other classes of Claims with which their legal rights are intertwined, if any, and no class of Claims will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims in such class. The Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims, and the Plan is legally confirmable.

Whether the Plan is fair and equitable depends upon the application of the so-called "absolute priority rule." Subject to certain exceptions, this rule, codified in section 1129(b)(2) of the Bankruptcy Code, generally requires that an impaired class of claims that has not accepted the plan must be paid in full if a more junior class receives any distribution under the plan.

With respect to unsecured claims, the absolute priority rule allows the confirmation of a plan over the rejection of a class of unsecured claims if the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property. Under the Plan, all Allowed Claims are to be paid 100-cents subject to certain limitations set forth herein. Therefore, there are no Impaired Classes. No Creditor is entitled to vote on the Plan, and all Creditors are deemed to accept the Plan.

# ARTICLE VII

## EFFECT OF CONFIRMATION

7.1      **Post-Effective Date Reorganized Debtor.**

The Reorganized Debtor is empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) make all Distributions contemplated hereby, (iii) employ and compensate professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Reorganized Debtor by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Reorganized Debtor to be necessary and proper to implement the provisions thereof. After the Effective Date, and even upon closing of the Case, the Reorganized Debtor shall remain as a reorganized entity free of the constraints of the Bankruptcy Code and operating under applicable state law. The pre-Effective Date authorized representatives, Jeffrey Dunston and Nathaniel Montgomery, will remain as post-Effective Date authorized representatives of the Debtor. NEB will continue to administer the daily operations of the Debtor post-Effective Date.

7.2      **Closing of Case.**

After the Effective Date and upon all distributions having been made including payment of Professional Fees, and the Case having been fully administered, the Case will be closed.

7.3      **Injunction**.

(a)      Except (i) as otherwise provided in the Plan, (ii) as otherwise provided under Final Order entered by the Bankruptcy Court or (iii) with respect to the Debtor's obligations under the Plan, the occurrence of the Effective Date will forever stay, restrain and permanently enjoin on and after the Effective Date (1) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property or the Debtor's other assets, to prevent or stay any person from carrying out the transactions set forth in this Plan or to interfere with any such transactions, (2) the creation, perfection or enforcement of any lien or encumbrance against the Property or the Debtor's other assets or (3) any Claim discharged under the Confirmation Order, this Plan or pursuant to section 1141(d)(1) of the Bankruptcy Code as against the Property or the Debtor's other assets.

(b)      Except as otherwise provided in the Plan or the Confirmation Order, the entry of the Confirmation Order, will constitute an injunction against the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset from the Property or the Debtor's other assets.

(c)      Nothing contained in the Plan or the Confirmation Order will enjoin, limit or restrict in any manner the Reorganized Debtor, from administering, enforcing, collecting or taking any other action after the Effective Date.

(d)         Any violation of the foregoing provisions by any party will subject the offending party to appropriate sanctions for violation of the within injunction, including, without limitation, damages, attorneys' fees, costs and disbursements.

(e)         The Bankruptcy Court will retain exclusive jurisdiction, and the Order confirming this Plan shall provide that jurisdiction of the Bankruptcy Court will survive the confirmation of this Plan for the purpose of enforcing all of the Plan provisions, including, without limitation, disputes relating to the interpretation and enforcement of Plan provisions.

7.4      **Limitation of Liability**.  Pursuant to section 1125(e) of the Bankruptcy Code, neither the Debtor, nor any of its respective members, officers, managers, directors, agents or employees (acting in such capacity) nor any attorney or other Professional employed by any of them, will have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation, consummation or administration of the Plan, this Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under the Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence.

7.5      **Plan and Confirmation Order as Release.**  From and after the Effective Date, a copy of the Confirmation Order and this Plan will constitute and may be submitted as a complete defense to any claim or liability released.

7.6      **Injunction.**

Except as otherwise provided in the Plan, all parties will be precluded and enjoined from asserting against the Debtor, and its respective successors, assets or properties, or against any property that is distributed, or is to be distributed under the Plan (including but not limited to the Property) any other or further Claim based upon any acts or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

Except as otherwise provided under the Plan, or a Final Order of the Bankruptcy Court, any judgment at any time obtained, to the extent that such judgment is a determination of the liability of the Debtor with respect to any debt discharged pursuant to the Plan, will be null and void and of no force and effect, regardless of whether a Proof of Claim therefor was filed or deemed filed and, except as otherwise provided in the Plan, all Creditors holding Claims against the Debtor, will be precluded from asserting against the Debtor, and any of its assets including the Property, or any property distributed under the Plan, any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, and, upon the Effective Date, the Confirmation Order will permanently enjoin all Creditors and their successors and assigns, from enforcing or seeking to enforce any such Claims against the Debtor.

7.7      **Releases**

Section 1125(e) of the Bankruptcy Code protects persons acting in good faith, from

civil claims arising in connection with solicitations of acceptances of plans of reorganization or participating in the offer, issuance, sale or purchase of a security under the Plan.  Pursuant to section 1125(e), neither the Debtor, nor any of their respective members, officers, managers, directors, agents or employees (acting in such capacity) nor any attorney or Professionals employed by any of them, will have or incur any liability to any person or entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, Confirmation, consummation or administration of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or the distribution of property under the Plan, or any other action taken or omitted to be taken in connection with the Case or the Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence.  From and after the Effective Date, a copy of the Confirmation Order and the Plan will constitute and may be submitted as a complete defense to any claim or liability released pursuant to the Plan.

(a)    **Debtor Release.**  The Plan provides that on the Effective Date, each Creditor will be deemed to have irrevocably waived, released and discharged the Debtor and its affiliates and any of its respective officers, managers, directors, employees, members, partners, representatives, attorneys, Professionals, predecessors, successors and assigns (collectively, the "Debtor Released Parties") from and against any and all claims, liabilities, suits, actions, threatened actions, whether in law or in equity, that may have existed from the beginning of time to the Effective Date including all claims or liabilities arising in connection with the formulation and efforts to confirm the Plan; provided, however, that the foregoing release will not constitute a release of the Debtor from any of its obligations under the Plan.

(b)    **NEB Release.**  In consideration for good and valuable consideration, the Plan provides that on the Effective Date, the Debtor and each Creditor will be deemed to have irrevocably waived, released and discharged NEB and its affiliates and any of its respective officers, managers, directors, employees, members, partners, representatives, attorneys, predecessors, successors and assigns from any and all claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, arising in connection with any claims or obligations on behalf of the Debtor and each Creditor that arose or occurred on or prior to the Effective Date.

(c)    **Exculpation.**  Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either of the Debtor Release or NEB Release (each as described above), and except as otherwise specifically provided in the Plan, the Debtor Released Parties are exculpated by and with respect to all parties (including the Debtor, Creditors and NEB) from claims, liabilities, suits, actions and threatened actions, whether in law or in equity, that may have existed prepetition or action taken postpetition or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, administering, implementing, or consummating the Plan or the Case.

## ARTICLE VIII

## ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under chapter 7 of the Bankruptcy Code or otherwise, (b) the dismissal of this Case or relief from the stay in favor of the City and the resulting continuation of the Foreclosure Action, or (c) the promulgation and confirmation of an alternative plan of reorganization. As discussed under the section entitled "Best Interest Test," under alternatives (a) and (b) above, there would be no assurance of recovery or the timing thereof to Creditors holding Unsecured Claims because any recovery would be dependent upon the uncertain outcome of a straight foreclosure or forced sale of the Property. The Plan provides the greatest likelihood for a substantial recovery by the Creditors.

## ARTICLE IX

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Unsecured Claim. This summary does not cover all potential U.S. federal income tax consequences that could possibly arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Unsecured Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. *Holders of Allowed Claims should consult their own tax advisor as to the Plan's specific federal, state, local and foreign income and other tax consequences.*

In accordance with the Plan, each holder of an Allowed Claim (a "Creditor") will be entitled to payment on its Allowed Claim in full. Each such Creditor will recognize gain or loss upon the receipt of payment equal to the difference, if any, between the "amount realized" by such Creditor and the Creditor's adjusted basis in his, her or its Allowed Claim. The "amount realized" is equal to the value of such Creditor's payments. Any gain or loss realized by such a Creditor should constitute ordinary income or loss to him, her or it unless the Allowed Claim is a capital asset. If an Allowed Claim is a capital asset, and it has been held for more than one year, such Creditor will likely realize long term capital gain or loss.

The tax consequences to holders of claims will differ and will depend on factors specific to each Creditor, including but not limited to: (i) whether the Creditor's Allowed Claim (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Creditor's Claim; (iii) the type of consideration received by the Creditor in exchange for the Allowed Claim; (iv) whether the Creditor is a United States person or foreign person for tax purposes;

whether the Creditor reports income on the accrual or cash basis method; and (v) whether the Creditor has taken a bad debt deduction or otherwise recognized loss with respect to an Allowed Claim.

THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT, NOTWITHSTANDING THE DESCRIPTION ABOVE, EACH CREDITOR CONSIDER, AND OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AS A RESULT OF THE PLAN.

THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR FOR THE PURPOSE OF AVOIDING TAX CONSEQUENCES OR PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH HOLDER SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1    **Orders in Aid of Consummation**. Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

10.2    **Compliance with Tax Requirements**. In connection with the Plan, the Debtor and the Reorganized Debtor, will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan will be subject to such withholding and reporting requirements; provided, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

10.3    **Due Authorization by Creditors.**    Each and every Creditor who accepts a distribution provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

10.4    **Amendments.**    The Plan may be altered, amended or modified by the Debtor, in writing and signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

10.5 **Revocation.** The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan will be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, the Debtor; or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor or its Estate.

10.6 **Filing of Additional Documents.** Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

10.7 **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

10.8 **Successors and Assigns.** The rights, benefits and obligations of any Entity named or referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or permitted assign of such Entity.

10.9 **Notices.** All notices and other communications to be given or made hereunder must be in writing and will be deemed to have been given or made when mailed or as otherwise set forth herein:

> **If to the Debtor, at:**
>
> Northeast Brooklyn Partnership
> Attn: Authorized Representative
> 132 Ralph Avenue
> Brooklyn, New York 11233
>
> -and-
>
> Archer & Greiner, P.C.
> *Counsel for Northeast Brooklyn Partnership*
> Attn: Allen G. Kadish
>       Harrison H.D. Breakstone
> 630 Third Avenue
> New York, New York 10017
>
> **If to NEB, at:**
> Northeast Brooklyn Housing Development Corporation
> Attn: President and Chief Executive Officer
> 132 Ralph Avenue
> Brooklyn, New York 11233

**If to the Purchaser, at:**
Hirschen Singer & Epstein LLP
*Counsel for Purchaser*
Attn: Russel A. Kivler
902 Broadway, 13th Floor
New York, New York 10010

Notices to any Creditor will be at (i) the addresses set forth on the respective Proofs of Claim filed by such holder; (ii) the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor after the date of any related Proof of Claim; (iii) the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Reorganized Debtor has not received a written notice of a change of address; or (iv) the address reflected in the Schedules if no Proof of Claim is filed and the Reorganized Debtor has not received a written notice of a change of address.

10.10   **Governing Law**.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

10.11   **Other Actions**.  On the Effective Date, and without limitation by any other provision of the Plan, the amendment of the Debtor's bylaws as may be appropriate, the bylaws of Reorganized Debtor, and all other actions and documents contemplated to be taken or executed on the Effective Date, will be authorized and approved in all respects pursuant to this Plan.  In order to effectuate the transactions set forth in the Plan the Reorganized Debtor may reincorporate or a new entity may be formed, consistent with the Plan, to serve as the Reorganized Debtor.  All matters provided for in this Plan involving the corporate structure of the Debtor or Reorganized Debtor, and any corporate action required by the Debtor or Reorganized Debtor in connection with this Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by officers, directors and employees of the Debtor or Reorganized Debtor. On the Effective Date, the appropriate officers and directors of the Reorganized Debtor are authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by this Plan in the name of and on behalf of Reorganized Debtor without the need for any required approvals, authorizations, or consents, except and solely to the extent provided for in this Plan. Nothing contained herein shall prevent the Debtor from taking such actions as may be reasonably necessary to consummate this Plan, although such actions may not specifically be provided for within this Plan.

10.12   **Severability**.   In the event any provision of this Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

10.13   **Business Day**.  In the event that this Plan requires an act to be performed on a day that is not a Business Day, such act will be performed on the first Business Day thereafter.

10.14    **Amendment of Bylaws.**  Pursuant to section 1123(a)(5)(I) of the Bankruptcy Code, the Debtor's bylaws and operating budget cash requirements will be deemed amended as of the Effective Date, to the extent necessary, to implement the terms of this Plan.

10.15    **Reorganized Debtor.**  The Debtor, on and after the Effective Date will be referred to as the Reorganized Debtor.

## ARTICLE XI

## ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Plan and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to Debtor's counsel:

ARCHER & GREINER, P.C.
*Counsel for Northeast Brooklyn Partnership*
Attn: Allen G. Kadish
Harrison H.D. Breakstone
630 Third Avenue
New York, New York 10017

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents in this Case are on file in the Office of the Clerk of the United States Bankruptcy Court at the United States Bankruptcy Court, 271-C Cadman Plaza East, Brooklyn, New York 11201, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 5:00 p.m. Additionally, copies of all pleadings, orders, lists, schedules, proofs of claim or other documents in this case may be viewed and printed over the Internet from the Bankruptcy Court's Electronic Case Filing system at http://www.nyeb.uscourts.gov.

## ARTICLE XII

## <u>CONCLUSION</u>

The Debtor believes the Plan is in the best interests of all Creditors and strongly encourages all holders of Claims against the Debtor to support confirmation thereof.

Dated: New York, New York  
      August 13, 2019

NORTHEAST BROOKLYN PARTNERSHIP  
Debtor and Debtor-in-Possession

By:_____  
    Jeffrey E. Dunston  
    *Authorized Representative*

ARCHER & GREINER, P.C.

By:_____s/ Allen G. Kadish_____  
    Allen G. Kadish  
    Harrison H.D. Breakstone  
630 Third Avenue  
New York, New York 10017  
Tel: (212) 682-4940  
Email:   akadish@archerlaw.com  
          hbreakstone@archerlaw.com

*Counsel for Northeast Brooklyn Partnership,*  
*Debtor and Debtor-in-Possession*

**<u>Index to Exhibits</u>**

Exhibit 5.1 (c):        **Projected Sources and Uses**
Exhibit 5.2:            **Causes of Action**

**<u>Exhibit 5.1(c)</u>**

**Projected Sources and Uses**

**In re Northeast Brooklyn Partnership, Chapter 11 Case No. 19-40822**
**Schedule of Claims/Proposed Uses (Estimates/Assumptions)** **DRAFT**

| SOURCES | | AMOUNT |
|---|---|---|
| Sale | | $4,300,000.00 |

| USES | As of February 11, 2019 | Interest Rate | As of October 31, 2019 |
|---|---|---|---|
| NYC Department of Housing Preservation & Development* (Future Payment Totals Calculated without additional interest after 6/26/19) | $2,701,622.14 | 16.00% | $2,870,275.72 |
| NYC Department of Housing Preservation & Development | $486,621.33 | 16.00% | $615,281.27 |
| NYC Department of Finance | $93,596.97 | 18.25% | $105,924.08 |
| NYC Office of Administrative Trials and Hearings | $400.00 | 9.00% | $425.98 |
| NYC Water Board | $88,819.14 | 7.00% | $93,305.99 |
| NYC Commissioner of Finance | $485.41 | 2.35% | $493.64 |
| IRS | $4,680.00 | 2.35% | $4,759.37 |
| | | | |
| Archer & Greiner, P.C.  (Counsel) | $0.00 | | $200,000.00 |
| Abrams Fensterman (Real Estate Transactional Counsel) | $0.00 | | $15,000.00 |
| Office of the U.S. Trustee Fee | | | $43,000.00 |
| CPEX Real Estate Broker Fee | $86,000.00 | | $86,000.00 |
| | | | |
| Advantage Wholesale Supply | $7,645.20 | 2.35% | $7,774.86 |
| All County Sewer & Drain, Inc. | $530.76 | 2.35% | $539.76 |
| Anthony Installation Inc. | $1,130.40 | 2.35% | $1,149.57 |
| B & M Utica Ave. Locksmith Inc. | $272.19 | 2.35% | $276.81 |
| Borinquen Exterminatinc Company Inc. | $600.00 | 2.35% | $610.18 |
| BXTERMINATOR | $1,435.16 | 2.35% | $1,459.50 |
| CohnReznick LLP | $10,425.00 | 2.35% | $10,601.80 |
| Con Ed | $2,042.29 | 2.35% | $2,076.93 |
| E & S Maintenance | $6,009.80 | 2.35% | $6,111.72 |
| Eldon V Lessie | $2,759.00 | 2.35% | $2,805.79 |
| Ever-Ready Fire Sprinkler, Inc | $900.00 | 2.35% | $915.26 |
| Falcon Power Installers | $1,350.95 | 2.35% | $1,373.86 |
| Frank Kennedy, R.A. | $500.00 | 2.35% | $508.48 |
| Hartford Steam Boiler | $140.00 | 2.35% | $142.37 |
| Ivan Armstrong | $12,646.00 | 2.35% | $12,860.47 |
| J.Alam Home Improvement, Inc. | $6,200.00 | 2.35% | $6,305.15 |
| Leema Plumbing & Heating | $240.00 | 2.35% | $244.07 |
| MDG Design & Construction LLC | $42,399.74 | 2.35% | $43,118.80 |
| Mobilink Wireless | $182.28 | 2.35% | $185.37 |
| National Grid | $13,012.91 | 2.35% | $13,233.60 |
| NEB, LP | $10,970.13 | 2.35% | $11,156.17 |
| NEBHDCo | $79,793.75 | 2.35% | $81,146.99 |
| New York Water Management | $4,002.05 | 2.35% | $4,069.92 |
| Raymond Ballard Apartments HDFC | $10,000.00 | 2.35% | $10,169.59 |
| Rosenblum and Bianco | $17,174.53 | 2.35% | $17,465.80 |
| S.D.L. Appliance Repair Service | $5,128.03 | 2.35% | $5,215.00 |
| SiteCompli, LLC | $3,363.50 | 2.35% | $3,420.54 |
| Sperber Denenberg & Kahan, P.C. (Landlord-Tenant Counsel) | $13,855.75 | 2.35% | $14,090.73 |
| Superior Maintenance Supply | $4,526.02 | 2.35% | $4,602.78 |
| | | | |
| PROJECTED TOTAL = | $3,721,460.43 | | $4,298,097.91 |

*AS STATED IN FORECLOSURE COMPLAINT; INTEREST TO BE CALCULATED UPON CONSULTATION WITH CITY, WHICH HAS BEEN REQUESTED.*
*PROJECTED ALLOWED CLAIMS; ALL RIGHTS RESERVED; ALL NUMBERS ARE ESTIMATES SUBJECT TO VERIFICATION AND RECONCILIATION AS OF CLOSING.*

**<u>Exhibit 5.2</u>**

**All rights of action are preserved post-Effective Date including the following:**

| Summary Description |
| --- |
| Certain Landlord-Tenant Litigation – List to be Provided. |
| Other – List to be Provided |