UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                                                                  Chapter 11

PARK MONROE HOUSING DEVELOPMENT            Case No. 1-19-40820 (CEC)
   FUND CORPORATION, *et al.,*                              (Jointly Administered)

        Debtors.

-----------------------------------------------------------x

**STIPULATION AND ORDER SETTLING (1) MOTION OF THE CITY OF NEW YORK FOR (I) STAY RELIEF TO PERMIT FORECLOSURE OF DEBTOR'S REAL PROPERTY OR, IN THE ALTERNATIVE, (II) DISMISSAL OF THE CASE OR (III) APPOINTMENT OF A CHAPTER 11 TRUSTEE AND (2) TENANTS' MOTION FOR THE ENTRY OF AN ORDER DIRECTING THE APPOINTMENT OF A TRUSTEE**

        **WHEREAS**, on February 11, 2019, Park Monroe Housing Development Fund Corporation ("**Park Monroe**"), 984-988 Greene Avenue Housing Development Fund Corporation ("**Greene Avenue**"), and Northeast Brooklyn Partnership ("**NBP**" and together with Park Monroe and Greene Avenue, the "**Debtors**") filed voluntary petitions under Chapter 11 of the Bankruptcy Code (the "**Petition Date**");

        **WHEREAS**, on June 25, 2019, the City filed its *Motion of the City of the New York for (I) Stay Relief to Permit Foreclosure of Debtor's Real Property or, in the Alternative, (II) Dismissal of the Case, or (III) Appointment of a Chapter 11 Trustee* (the "**City Motion**") [ECF No. 83];

        **WHEREAS**, on July 23, 2019, the Tenants[1] filed their *Motion for the Entry of an Order Directing the Appointment of a Chapter 11 Trustee* (the "**Tenants' Motion**"; together with the City Motion, the "**Motions**") [ECF No. 101];

        **WHEREAS**, on August 7, 2019, the Debtors filed oppositions to the City Motion and the Tenants Motion [ECF Nos. 109; 110];

        **WHEREAS**, on August 14, 2019, the Debtors filed a chapter 11 plan (the "**NBP Plan**") and accompanying disclosure statement (the "**NBP Disclosure Statement**") for Debtor NBP [ECF Nos. 126; 127];

---

[1]    "**Tenants**" is defined as certain tenants of Debtors' buildings. The represented Tenants are as follows: Willie Loadholdt, Pamela Tyler, Myra Toombs, Yessenia Medina, Lorna Page, Alva Haywood, Wakina Ward, Ester Clarke, Shuntelle King, Rebecca Garcia, Tameeka Hankerson, Diane Robinson, Elizabeth Oyabade, Donna Matthews, Latoya Wiggins, Akheem Ali Shabazz, Deana Miller, Cheryl Warren, Suzan Blondet, Dino Perera, Robin Page, Lorraine Wignon, Trevor Ramsey, Sekou Fofana, Anna Caliste, Debra King, Carline Perry, Makuna Mtambuzi, Nicole Holder, Sandra Telford, Gail Tolbert, David Pratt, Annette Dingle, Tammie Brown, Lonnie Love and Karen Chestnut.

**WHEREAS**, a hearing to consider approval of the NBP Disclosure Statement is scheduled for October 2, 2019;

**WHEREAS**, the Court held an initial hearing on the Motions on August 14, 2019. Following the hearing, on August 22, 2019, the Court issued a scheduling order [ECF No. 123] scheduling an evidentiary hearing on the Motions for October 2, 2019;

**WHEREAS**, following negotiations among the Debtors, the City and the Tenants (together, the "**Parties**"), the Parties have agreed to resolve and settle the Motions as provided in this Stipulation and Order, as set forth below.

**NOW, THEREFORE, IT IS STIPULATED AND AGREED BETWEEN THE PARTIES**:

1. <u>Adjournment of Evidentiary Hearing</u>. The evidentiary hearing with respect to the Motions currently scheduled for October 2, 2019 is adjourned to December 11, 2019 at 10:00 a.m. The Debtors shall file and serve a notice of hearing in respect thereof.

2. <u>Park Monroe</u>. Park Monroe agrees to sell its properties to Mutual Housing Association of New York ("**MHANY**") or another party of the City's choosing. Such sale shall be on terms acceptable to the City and the Tenants. It is contemplated that pursuant to such sale, MHANY (or other designated buyer) shall be responsible for paying or assuming Park Monroe's outstanding real property taxes, charges and encumbrances and shall assume Park Monroe's obligations under its mortgages with the City. The sale shall also include an amount for payment of administrative and/or other claims as to be agreed between Park Monroe, the City and any prospective buyer. It is also contemplated that in connection with such sale (i) the existing claims of the Tenants against Park Monroe shall be addressed in a manner satisfactory to the Tenants, MHANY and the City through the cure process, including any judicial determinations thereof, associated with Park Monroe's assumption of the Tenants' leases with Park Monroe and assignment to MHANY (or other designated buyer), (ii) the Tenants shall not have any continuing obligations to Park Monroe (and Park Monroe shall not have any continuing obligations to the Tenants, except as may be required with regard to assumption and assignment of such claims and cure), and (iii) except as otherwise agreed by the Tenants and MHANY (or other designated buyer), nothing in the sale or the cure process shall prejudice the Tenants' rights against MHANY (or other designated buyer) in respect of (a) any unremedied conditions or repair issues in their apartments as of the closing of the sale (excluding any claims for damages in respect thereof arising prior to the closing date of the sale, which claims would be dealt with through the cure process) and (b) any claims arising after the closing of the sale for rent overcharges. Once such terms of sale are reduced to writing, Park Monroe shall promptly seek Court approval to approve such sale and, following Court approval thereof, take all steps necessary to consummate such sale as reasonably quickly as possible.

3. <u>NBP</u>. NBP shall be permitted to proceed with seeking approval of the NBP Disclosure Statement and for confirmation of the NBP Plan and the contemplated sale to the Purchaser (as defined in the NBP Plan). The Debtors shall modify the NBP Plan to clarify that (i)

the existing claims of the Tenants under their leases against NBP shall be addressed and paid through the cure process, including any judicial determinations thereof, associated with NBP's assumption of the Tenants' leases with NBP and assigned to the Purchaser, (ii) the Tenants shall not have any continuing obligations to NBP following the assumption and assignment of their leases to the Purchaser, (iii) any claim of the Tenants against NBP which are not addressed through the cure process shall be treated in accordance with the terms of the NBP Plan, and (iv) nothing in the NBP Plan or the cure process shall prejudice the Tenants' rights against the Purchaser in respect of (a) any unremedied conditions or repair issues in their apartments as of the closing of the sale (excluding any claims for damages in respect thereof arising prior to the closing date of the sale, which claims would be dealt with through the cure process) and (b) any claims arising after the closing of the sale for rent overcharges. All of the Tenants' and the City's rights in respect of the NBP Disclosure Statement and the NBP Plan are reserved.

4. <u>Greene Avenue</u>. Greene Avenue shall be afforded through December 6, 2019 the opportunity to file a plan. Greene Avenue's exclusivity, within the terms of 11 U.S.C. 1121(d), is hereby so maintained and extended to file a plan, and, if filed, for a further sixty days to solicit such plan. All of the Tenants' and the City's rights in respect of such plan and disclosure statement are reserved. If Greene Avenue fails to file a plan that has a reasonable possibility of being confirmed within a reasonable time on or before December 6, 2019, Greene Avenue agrees to sell its properties to a party of the City's choosing. Such sale shall be on terms acceptable to the City and the Tenants. It is contemplated that pursuant to such sale, the designated buyer shall be responsible for paying or assuming Greene Avenue's outstanding real property taxes, charges and encumbrances and shall assume, on modified terms, Greene Avenue's obligations under its mortgages with the City. The sale shall also include an amount for payment of administrative and/or other claims as to be agreed between Greene Avenue, the City and any designated buyer. It is also contemplated that in connection with such sale (i) the existing claims of the Tenants against Greene Avenue shall be addressed in a manner satisfactory to the Tenants, the designated buyer, and the City through the cure process, including any judicial determinations thereof, associated with Greene Avenue's assumption of the Tenants' leases with Greene Avenue and assignment to the designated buyer, (ii) the Tenants shall not have any continuing obligations to Greene Avenue (and Greene Avenue shall not have any continuing obligations to the Tenants, except as may be required with regard to assumption and assignment of such claims and cure), and (iii) except as otherwise agreed by the Tenants and the designated buyer, nothing in the sale or the cure process shall prejudice the Tenants' rights against the designated buyer in respect of (a) any unremedied conditions or repair issues in their apartments as of the closing of the sale (excluding any claims for damages in respect thereof arising prior to the closing date of the sale, which claims would be dealt with through the cure process) and (b) any claims arising after the closing of the sale for rent overcharges. Once such terms of sale are reduced to writing, Greene Avenue shall promptly seek Court approval to approve such sale and, following Court approval thereof, take all steps necessary to consummate such sale as reasonably quickly as possible.

5. <u>Delivery of Rent Documentation</u>. In connection with, and prior to the closing of, the sale of any of the Debtors' buildings, the Debtor shall transfer to the prospective buyer(s) all documents governing the apartment leases including the bases and/or payment standards used to determine higher and lower initial and subsequent rent setting and any adjustments, initial and renewal leases for all apartments, New York City Division of Housing &

Community Renewal annual registrations, building wide rent rolls documents supporting any claimed rent adjustments based on Major Capital Improvements or Individual Apartment Increases including but not limited to contracts for work performed and evidence of payment, any rent reduction orders. The Debtors will copy Tenants' counsel on such correspondence to the buyer(s), including attachments.

6. <u>Status Conference</u>. The Court will hold a status conference in the Debtors' cases on November *13*, 2019 ***at 2:30 p.m. (CEC)***.

7. <u>Continued Repairs</u>. Pending any sale transactions, the Debtors agree promptly to undertake all necessary repairs and maintenances, as required by law, with respect to their buildings and all apartments in the buildings, including the Tenants' apartments and to comply in all respects with their applicable legal obligations as landlords.

8. <u>Effect of Failure to Comply</u>. Failure of a Debtor to comply with this Stipulation and Order shall constitute cause for the immediate granting of the relief requested in the Motions with respect to such Debtor. The Debtors waive all rights to oppose such Motions except with respect to the issue of whether the Debtors complied with this Stipulation and Order.

9. <u>Modifications and Waivers</u>. This Stipulation shall not be modified in any respect except by a writing executed by all the Parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. The waiver by any Party of any breach of this Stipulation shall not be deemed or construed as a waiver of any other prior, subsequent or contemporaneous breach of this Stipulation.

10. <u>Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction over all disputes arising under this Stipulation and Order.

11. <u>Execution</u>. This Stipulation and Order may be executed in counterparts by electronic or original signature, each of which shall constitute and be deemed one and the same instrument. Each of the attorneys executing this Stipulation on behalf of his respective client(s) hereby represents and warrants that he or she has full power and authority to do so.

[*signature page to follow*]

s/ Benjamin Mintz

**ARNOLD & PORTER KAYE SCHOLER, LLP**
Benjamin Mintz
Brendan Gibbons
250 W. 55th Street
New York, NY 10019
Tel: (212) 836-8000
benjamin.mintz@arnoldporter.com
brendan.gibbons@arnoldporter.com

*Co-Counsel for the Tenants*

s/ Hugh Shull

**CITY OF NEW YORK**
Georgia Pestana ,
Acting Corporation Counsel,
100 Church Street
New York, New York 10007
By: Hugh Shull, Ass't Corp. Counsel
Tel: (212) 356-2138
hughs@law.nyc.gov

*Counsel for the City*

 s/ Samar Katnani

**BROOKLYN LEGAL SERVICES NYC**
Samar Katnani
Jane Landry-Reyes
105 Court St. 4th floor
Brooklyn, NY 11201
Tel: (718) 237-5500
skatnani@blsnyc.org
jlandry@blsnyc.org

*Co-Counsel for the Tenants*

 s/ Allen G. Kadish by HHDB

**ARCHER & GREINER, P.C.**
Allen G. Kadish
Harrison H.D. Breakstone
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
akadish@archerlaw.com
hbreakstone@archerlaw.com

*Counsel for the Debtors*

SO ORDERED



**Dated: Brooklyn, New York**
**October 22, 2019**

**Carla E. Craig**
**United States Bankruptcy Judge**